In the Matter of Robert Sylvanis RUTHERFORD, Jr. and Jo Lynne Rutherford, Debtors.

Robert Sylvanis RUTHERFORD, Jr., Jo Lynne Rutherford, Plaintiffs,

v.

ASSOCIATES FINANCIAL SERVICES COMPANY OF OHIO, Defendant.

Adv. No. 3–80–0025.
Bankruptcy No. 3–79–02046.

United States Bankruptcy Court, S. D. Ohio, W. D.

April 16, 1980.

Paul D. Malina, Springfield, Ohio, for defendant.

Carl E. Juergens, Springfield, Ohio, for plaintiffs.

James R. Warren, Trustee, Springfield, Ohio.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

This matter is before the court upon a complaint to avoid a non-possessory, non-purchase money security interest in household and personal goods filed by Debtors on 25 January 1980; the answer served on 19 February 1980 by defendant, Associates Financial Service Company; and was submitted on stipulated facts in the pretrial order; the brief in behalf of defendant by Paul D. Malina its attorney on 13 March 1980; and the brief filed in behalf of plaintiffs by Carl E. Juergens, their attorney, on 31 March 1980.

## FACTS AND OPINION

The material facts are not at issue. Associates Financial Services Company made a loan in original amount of $2,958.67 to debtors on or about 13 November 1977, and obtained the subject security interest for the debt. The voluntary petition for relief was filed in the bankruptcy court on 30 November 1979, when the balance due on the loan was about $2,800.00. There has been no judicial valuation of the collateral, which was scheduled by debtors at a market value of $400.00.

The subject household goods are clearly exempt property under the terms of *Ohio Revised Code Section 2329.66(A)(4)(b)*, not to exceed an aggregate value of $1,500.00, (because of a claimed homestead exemption).

The only issue submitted is whether *Section 11 U.S.C. 522(f) of the Bankruptcy Code*, can be applied to avoid a security interest antedating the effective date of this federal statute, on 9 October 1979.

There are numerous cases on various facets of this issue, apparently epidemic throughout the country. There are decisions by the United States Supreme Court on the fringes of the question, and numerous other case precedents which skirt around and flirt with concepts sounding under the express bankruptcy clause of the Constitution of the United States (Article 1 § 8 Cl. 4) and the supremacy clause (Article 6 Cl. 2).

No purpose is served now to duplicate excellent encyclopedial discussions, such as found in *9 Am.Jur.2d Bankruptcy §§ 4 seq. 31 Am.Jur.2d Exemptions §§ 4–8; and 3 Bkr.L.Ed. §§ 22.6 and 22.11.*

Quoting from *31 Am.Jur.2d Exemptions § 6,*

"Now the view squarely taken and generally accepted is that the remedy is *inseparable from the contract itself* and that statutes creating or enlarging exemptions substantially and materially are, as applied to pre-existing debts, unconstitutional as impairing the obligation of con-

tracts." Continuing in a semantical vein, from *9 Am.Jur.2d Bankruptcy § 8 . . ."* while the Congress is the exercise of the powers conferred upon it to establish uniform laws on the subject of bankruptcy is not prohibited from impairing the obligation of contracts, it is subject, as are the other great substantive powers of Congress, to the Fifth Amendment to the Constitution which provides that no person shall be deprived of life, liberty, or property without due process of law. The power of Congress to impair the obligation of a contract under its power to legislate on the subject of bankruptcies does not permit or countenance the total or partial destruction of vested property rights, and if such legislation substantially impairs vested rights, it violates the Fifth Amendment and is unconstitutional. But since any exercise of the bankruptcy power impairs the obligation of contracts, such impairment is not to be taken as in itself a denial of the process, and statutes dealing with bankruptcy matters are, as a general rule, sustained on the ground that they effect the remedy, and not vested rights."

A careful examination of the leading cases cited in *American Jurisprudence 2d* and in the briefs submitted by the parties does not lead to any clearer analysis of the principles annunciated. *See Hepburn v. Griswold, 75 U.S. (8 Wallace) 603, 19 L.Ed. 513; Hanover Nat. Bank v. Moyses, 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113; In re Prima Co., (CA 7) 88 F.2d 785; Campbell v. Alleghany Corp., (CA 4) 75 F.2d 947; Wright v. Union Central Life Ins. Co., 304 U.S. 502, 58 S.Ct. 1025, 82 L.Ed. 1490; New Jersey v. Anderson, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284.*

The focus, therefore, is to the structure and terms of the particular statutes in question to rationalize their specific operation and effect and to determine whether they bear constitutional muster.

The constitutionality would depend upon whether the exemption is claimed, as *instanter,* under the bankruptcy clause of the constitution or in a state court, in a non-bankruptcy litigation context (which is now obviously not pertinent). We interpret the Ohio exemption statutes as based upon the bankruptcy clause of the federal constitution, since they were adopted pursuant to an enabling provision adopted by the Congress of the United States. *See 11 U.S.C. § 522(b)(1).*

Under the bankruptcy clause and the decisions of the United States Supreme Court and the other annotated case precedents giving rise to the comments above, the only clear conclusion for judicial application is a proverbial "balancing test".

It is the opinion of this court that the basic inquiry should be into the type of collateral covered by a security agreement and the impairment as postulated. The judicial focus is upon the practical aspects and the true purpose and effect of this agreement. In addition to the monetary aspects often mentioned, and even more crucial, is the permanence of the nature of the collateral and the long term purport of the agreement. Concomitantly, what was the real function of the security interest in the market place? Was value of the collateral a *sine qua non* to granting the loan, or was the agreement primarily intended to reduce the possibility of fickle defaults? In other words was the security intended essentially as psychological or sociological thrust, rather than purely economic? What was the ratio of loan repayments to the true market value of the collateral and its term value?

Balanced against such factors as these is the acculturation of the family unit and the now axiomatic purpose and policy of exemption laws to afford a minimum degree of protection to the family debtor, and indirectly to the public welfare. With such an opportunity for support, the family is far less likely to become a burden upon the general public.

This balance is very aptly, but cautiously, incorporated into the statutory exemptions applicable in the bankruptcy context as enacted by the Congress. Certain property of a debtor may be claimed as exempt although subject to a lien, but only to the extent of the unencumbered portion, such

as real estate, which obviously serves a long range financial or economic purpose in addition to the purpose of providing a residence. Significantly, however, non-possessory, non-purchase money security interests in the vital necessities of family life, such as household goods, wearing apparel, prescribed health aids, and similar items held "primarily for the personal, family, or household use of the debtor or a dependent of the debtor" are placed in a special category for the public welfare. This purpose is accentuated by the express provision that waivers of such exemptions cannot avoid the fixing of a lien. *11 U.S.C. § 522.*

It is important to note that the monetary reasonableness of the statutory exemption at issue has not been drawn into issue.

The practical application of these distinctions is very well illustrated by the facts of this case. The original loan was in the amount of nearly $3,000.00, over 2½ years ago. The balance due on 30 November 1979, the date of the order for relief, of the household goods taken as collateral was valued by the debtors at only $400.00. The practical effect of such a security interest can only be psychological and certainly insignificant when juxtaposed to the crying needs of the debtors and family.

In summary, whenever such a financial arrangement is executed between a lender and the chief support of a family unit, there must be the implied understanding and condition that, in the event of a subsequent bankruptcy context, the paramount social purpose and family needs will negate such a contractual purpose. Whenever a lender takes vital family necessaries as collateral, there is no true impairment of a contract; but rather, an implied contractual risk. Under such a conclusion the lender has assumed the acknowledged risk of an improvident loan, assuming no question of dischargeability is justiciable.

In terms of case precedents, a loan on such vital family necessities deemed by legislative purpose to be exempt from execution, is perfectly valid in substantive law, but in bankruptcy the remedy of enforcement has been negated.

*ORDERED, ADJUDGED AND DECREED,* that the impairment of security interests on non-possessory, non-purchase money household goods, within the statutory exemption limitations, is a constitutional exercise of the constitutional bankruptcy powers conferred by the United States Constitution.