In re Stanley P. AMBROSE and Judith M. Ambrose, Debtors.

CENTRAN BANK OF AKRON, Plaintiff,

v.

Stanley P. AMBROSE and Judith M. Ambrose, Defendants.

Bankruptcy No. 579–1050.
Adversary No. 580–0023.

United States Bankruptcy Court, N. D. Ohio.

June 6, 1980.

Dianne R. Newman, Akron, Ohio, for debtors.

David Friedman, Barberton, Ohio, for plaintiff.

## FINDING AS TO RECLAMATION COMPLAINT

H. F. WHITE, Bankruptcy Judge.

The Plaintiff, Centran Bank of Akron (hereinafter referred to as Centran) filed a complaint to reclaim household goods. The Defendants, Stanley P. Ambrose and Judith M. Ambrose, debtors in bankruptcy, (hereinafter referred to as debtors) filed an answer claiming that the property is exempt and requesting the Court to find that the lien of Centran is void under 11 U.S.C. § 522(f)(2)(A) of the Bankruptcy Code.

The parties agreed that there was no dispute as to the facts and submitted the case on the issue of law. However, in order to clarify the issues, this Court makes the following finding of Fact and Law.

## FINDING OF FACT

1. The debtors filed a voluntary petition in Bankruptcy on November 27, 1979.

2. The debtors claimed furniture and household goods exempt under Ohio Revised Code 2329.66(A)(4)(b).

3. No party in interest objected to the property claimed exempt by the debtors, except Centran which claims a lien on the exempt property.

4. Centran has a signed security agreement and duly filed a Financing Statement on November 3, 1978, as required by Ohio Rev.Code 1309, on the property claimed exempt by the debtors.

5. The lien was to secure a loan made on October 21, 1978. The balance now due Centran is $2,571.34.

6. The security interest of Centran is a nonpossessory, nonpurchase-money interest in household furnishings and goods.

7. Public Law 95–598, Title 1 was enacted November 6, 1978 and Section 522 became effective on October 1, 1979.

## ISSUE

The issue is whether 11 U.S.C. 522(f)(2)(A) can impair contractual obligations made prior to the effective date of the New Bankruptcy Code.

## DISCUSSIONS OF LAW

11 U.S.C. Section 522(f) provides:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
(1) a judicial lien; or
(2) a nonpossessory, nonpurchase-money security interest in any—
(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

Subsection (b) of 11 U.S.C. Section 522 gives the debtor a choice of exempting from property of the estate either (1) property that is specified under subsection (d) of 11 U.S.C. Section 522, unless the State law of the State in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition specifically does not so authorize; or (2) any property that is exempt under Federal law, other than 11 U.S.C. Section 522(d), or under State law of the State in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition.

The General Assembly of the State of Ohio "opted out" of the Federal exemptions allowed under 11 U.S.C. Section 522(d) by enacting Ohio Revised Code Section 2329.662. Section 2329.662 of the Ohio Revised Code provides that:

Pursuant to the "Bankruptcy Reform Act of 1978", 92 Stat. 2549, 11 U.S.C.A. 522(b)(1), this state specifically does not authorize debtors who are domiciled in this state to exempt property specified in the "Bankruptcy Reform Act of 1978". 92 Stat. 2549, 11 U.S.C.A. 522(d).

Thus, a debtor domiciled in Ohio may only exempt from property of his estate property that is specified under Ohio Revised Code Section 2329.66.

Ohio Revised Code Section 2329.66(A)(4)(b) entitles the debtor to hold exempt:

. . . the person's interest, not to exceed two hundred dollars in any particular item, in household furnishings, household goods, appliances, . . ., that are held primarily for the personal, family, or household use of the person.

The debtors, herein, claimed their household goods exempt under ORC § 2329.66(A)(4)(b) and are attempting to avoid the nonpur-

chase-money security interest of Centran in said household goods pursuant to 11 U.S.C. §§ 522(f).

The power to legislate on the subject of bankruptcies is conferred expressly upon Congress by the Constitution of the United States. Article I, Section 8, clause 5 of the United States Constitution provides: "The Congress shall have Power . . . to establish . . . uniform Laws on the subject of Bankruptcies throughout the land." In addition to this express grant, there is the general grant of power under Article I, section 8, clause 18 that: "The Congress shall have the Power . . . to make all laws which are necessary and *proper for carrying into Execution the foregoing Powers . . . ".*

■ The uniformity which is required by the Constitution relates to the law itself and not to its results upon the varying rights of debtor and creditor under the laws of the several states. *Thomas v. Woode,* 173 F. 585 (8th Cir. 1909).

■ Absolute uniformity in the application of the Bankruptcy Act is impossible, since Congress cannot create uniform conditions and circumstances in the various states of the Union. *Thomas,* supra. Thus, the recognition of state laws as determinative of dower rights, liens, priorities, and exemptions, does not render the Bankruptcy Act unconstitutional as lacking in uniformity, although the result of such recognition is that the Act does not operate with the same results in all states. *Stellwagen v. Clum,* 245 U.S. 605 at 613, 38 S.Ct. 215, at 217, 62 L.Ed. 507 (1918).

■ The grant of power to Congress to legislate on the subject of bankruptcies includes the power to impair the obligations of contracts notwithstanding the individual states are forbidden to do so. *Hanover National Bank v. Moyses,* 186 U.S. 181, at 188, 22 S.Ct. 857, at 860, 46 L.Ed. 1113 (1902). Article I, section 10 of the Constitution of the United States which prohibits any state from passing a law which impairs the obligations of contracts, is in its terms, a limitation on the powers of the states only. *Louisville Joint Stock Land Bank v. Radford,* 74 F.2d 576, at 580 (6th Cir. 1935).

■ The Constitutional provision conferring upon Congress the power to legislate on the subject of bankruptcies is read into contracts as constituting a part thereof. *Wright v. Union Central Life Ins. Co.,* 304 U.S. 502 at 516, 58 S.Ct. 1025, at 1033, 82 L.Ed. 1490 (1938). A mortgagee's rights are at all times subject to bankruptcy legislation by Congress affecting the creditor's remedy against the debtor's assets or the measure of the creditor's participation therein provided only that the bankruptcy provisions are consonant with fair, reasonable, and equitable distribution of the assets. Re *Chicago, R.I. & P.R. Co.,* 90 F.2d 312 at 316 (7th Cir. 1937).

■ The power of Congress to establish bankruptcy laws is subject to the due process clause of the Fifth Amendment to the United States Constitution. It has been held that a violation of the fifth amendment due process clause occurs when the retrospective application of a bankruptcy statute destroys vested property rights. *Louisville Joint Stock Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935) (hereinafter cited as *Radford* ).

■ The question as to whether a statute operates retrospectively, or prospectively only, is one of legislative intent. *Hassett v. Welch,* 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858 (1938). Section 403(a) of Title IV of the Bankruptcy Reform Act of 1978, Pub.L. 95–598, known as the "Savings Provision," provides that:

(a) A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted.

■ Accordingly, only cases commenced prior to October 1, 1979, the effective date of the Bankruptcy Reform Act of 1978, are to be determined under the former Bankruptcy Act (bankruptcy statute enacted on July 1, 1898, and amended from time to

time until the passage of the 1978 legislation.) For all other purposes, the Bankruptcy Act is repealed. Section 401(a) Title IV, Pub.L. 95–598.

 Thus, in cases filed after October 1, 1979, if Congress did not intend the substantive provisions of the Bankruptcy Reform Act to apply to obligations created by the debtors prior to October 1, 1979, there would be no bankruptcy laws in effect to deal with those debts. Therefore, it appears that Congress intended that the Bankruptcy Reform Act be applied retrospectively.

In the *Radford* case, Radford, hereinafter referred to as debtor, took advantage of the provisions of the Frazier-Lemke Act, which amended section 75 of the Bankruptcy Act, and sought to stay all proceedings against his farm by the mortgagee bank for five years, during which five years the debtor was to retain possession provided he pay a reasonable rental. At the end of the five years, or prior thereto, the debtor could purchase the property by paying into the court the appraised price of the property. The mortgagee bank, in the *Radford* case, refused to consent to the sale of the property to the debtor under the provisions of the Frazier-Lemke Act.

The Supreme Court held that the effect of the Frazier-Lemke Act, which only applied to debts existing at the time the Act became effective, was the taking of substantive rights in specific property acquired by the bank prior to the Act. *Radford* supra, 295 U.S. at 590, 55 S.Ct. at 863. The Court looked to the law of the State, Kentucky, and found the following to be the rights of the mortgagee prior to the passage of the Act:

1. right to retain lien until indebtedness thereby secured is paid;
2. right to realize upon security by judicial public sale;
3. right to determine when such sale shall be held, subject only to discretion of court;
4. right to protect its interest in the property by bidding at such sale and thus to assure having mortgaged property devoted primarily to satisfaction of debt, either through receipt of proceeds of fair competitive sale or by taking property itself; and
5. right to control meanwhile the property during period of default, subject only to discretion of court, and to have rents and profits collected by receiver for satisfaction of the debt.

The court in *Radford* held section 75 of the Bankruptcy Act invalid because it deprived the mortgagor of these five enumerated rights.

The underlying principle of contracts relating to pledges of property as security for debts was described in *In re Carter*, 56 F.Supp. 385 at 393 (W.D.Va., 1944) as the right of the creditor to acquire property pledged as security in lieu of his debt in case the debt is not paid. *The creditor lends money because of his belief that the property is worth at least the amount of the loan and because of his willingness to take the property in lieu of the debt in case the debt is not paid. This is the foundation, the essential element of every such contract.* (emphasis added) *In re Carter*, supra at 388.

In the *Radford* case, the mortgagee bank did lend money to the debtor and did take the farm land as security for the loan because of the bank's belief that the property was worth at least the amount of the loan and because of its willingness to take the farm land in lieu of the debt in case the debt was not paid. This is not the case where a creditor takes a nonpurchase-money security interest in the debtor's household and personal goods. Congress realized this difference and in explaining the purpose of section 522(f) of the Bankruptcy Code stated that:

. . . Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor's belongings, and obtain a waiver by the debtor of his exemptions . . . If the debtor encounters financial difficulty, creditors often use threats of repossession of all of the debtor's household goods as a means of obtaining payment.

In fact, were the creditor to carry through on his threat and foreclose on the property, he would receive little, for

household goods have little resale value. They are far more valuable to the creditor in the debtor's hands, for they provide a credible basis for the threat, because the replacement costs of the goods are generally high. Thus creditors rarely repossess, and debtors, ignorant of the creditors' true intentions, are coerced into payments they simply cannot afford to make. *H.Rep.No.95–595*, 95th Cong., 1st Sess. 127 (1977) U.S.Code Cong. & Admin. News 1978, pp. 5787, 6088.

It has been the experience of this court that creditors holding nonpurchase-money security interests on all of the debtor's household goods and a second mortgage on the debtor's residence release such liens on household goods when they become aware that the debtor is about to file a petition under Chapter 13 of the Bankruptcy Code. Under 11 U.S.C. § 1322(b)(2), a chapter 13 plan may "modify the rights of holders of secured claims, *other than* a claim secured *only* by a security interest in real property that is the debtor's principal residence, . . ." (emphasis added). Thus, the creditors release their liens on debtor's household goods in an attempt to take away the debtor's ability to modify their rights under the provisions of a chapter 13 plan. This course of action by creditors lends support to the insight of Congress that holders of nonpurchase-money security interest on household goods rarely repossess. A creditor who makes a loan and takes a nonpurchase-money security interest in highly depreciable household goods as security for the loan, does not actually take the household goods as security for the loan because there is no belief by the creditor that the household goods are worth the amount of the loan. The relationship between the value of the security and the amount of the loan that is present in a mortgage of real estate is not present in a nonpurchase-money lien on household goods. Thus, such creditor is rarely willing to take the household goods in lieu of the debt in case of default.

In one situation where the creditor holding household goods as security did repossess such goods upon the debtor's default, the court was informed that said creditor took the goods to the junk yard. This action by the creditor demonstrates that the creditor does not look to the household goods in lieu of payment when there is a default.

In *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976) the Supreme Court upheld the validity of Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended by the Black Lung Benefits Act of 1972, against the contention of coal mine operators that the Amended Act violated the Fifth Amendment Due Process Clause by requiring them to compensate former employees who terminated their work in the industry before such Act was passed and the survivors of such employees. The court acknowledged that the operators may have been unaware of the dangers of the disease at the time and that the operators may have relied on the current state of the law that failed to impose liability on them.

The Court found that:

It is by now well established that legislative Acts adjusting burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on the one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way. 428 U.S. at 15 [, 96 S.Ct. at 2892]. See: *Ferguson v. Skrupa*, 372 U.S. 726 [, 83 S.Ct. 1028, 10 L.Ed.2d 93] (1963); *Williamson v. Lee Optical Co.*, 348 U.S. 483 [487–488] [, 75 S.Ct. 461, 464, 99 L.Ed. 563] (1955).

The court further found that: "Our cases are clear that legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations." 428 U.S. at 16, 96 S.Ct. at 2893. See: *Fleming v. Rhodes*, 331 U.S. 100, 67 S.Ct. 1140, 91 L.Ed. 1368 (1947), *Carpenter v. Wabash R. Co.*, 309 U.S. 23, 60 S.Ct. 416, 84 L.Ed. 558 (1940), *Norman v. Baltimore & Ohio R. Co.*, 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885 (1935), *Home Bldg. & Loan Assn. v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934), and *Louisville & Nashville R. Co. v. Mottley*, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297 (1911).

As to the constitutionality of the retrospective application of the Black Lung Benefits Act of 1972 in view of the due process requirement of the Fifth Amendment, the Court held that: "The imposition of liability for the effects of disabilities bred in the past is justified as a rational measure to spread the costs of employees' disabilities to those who have profited from the fruits of their labor—the operators and the coal consumers." 428 U.S. at 18, 96 S.Ct. at 2893.

Thus, in *Usery* the court determined that the Black Lung Benefits Act of 1972 had a rational relationship to a proper governmental end and upheld the Act's retrospective application even though such application might impair recognizable property rights.

Section 522(f) of the Bankruptcy Code is addressed to the legitimate end of protecting the debtor's exemptions, his discharge, and thus his fresh start and the means taken, permitting the debtor to avoid certain liens on certain exempt property, are reasonable and appropriate to that end. For the provisions of the Bankruptcy Act to violate the Fifth Amendment they must be so grossly arbitrary and unreasonable as to be incompatible with fundamental law. *Campbell v. Alleghany Corp.*, 75 F.2d 947 at 953 (4th Cir. 1935). See Also: *Hanover*, supra, 186 U.S. at 192, 22 S.Ct. at 862.

Section 522(f) of the Bankruptcy Code does not make it possible for the debtor to avoid all nonpurchase-money security interests in exempt property. The debtor may only avoid a nonpurchase-money security interest in three categories of property: (1) household goods, (2) tools of trade, and (3) prescribed health aids, to the extent that the property could have been exempted in the absence of such lien. These three categories of property encompass property that is required for the maintenance, health, and welfare for the debtor and his family. The purpose of an exemption is not for the personal privilege of the debtor but for the benefit of his family who may be destitute and the public who might otherwise be burdened with the support of an insolvent debtor's family. *In re Perry*, 225 F.Supp. 481 at 481–82 (N.D.Ohio 1963).

Congress, when drafting the new Bankruptcy Code, looked to the practice of creditors with nonpurchase-money security interests under the Bankruptcy Act and concluded that these creditors had an unfair advantage over the debtor. Congress intended that the debtor use the avoiding power under Section 522(f) of the Bankruptcy Code, to eliminate this unfair advantage. *H.Rep.No.95–595*, 95th Cong., 1st Sess. 127 (1977).

The Court is aware that a trial court should be slow to deny constitutionality to an Act of Congress unless its conflict with the constitutional provision is clear. Such duty belongs peculiarly to the appellate courts. *Thompson v. United States*, 148 F.Supp. 910 at 914 (E.D.Pa.1957). Further, the burden of establishing the unconstitutionality of a statute rests on him who assails it and doubt as to the constitutionality of an act should always be resolved in its favor. *Metropolitan Cas. Ins. Co. v. Brownell*, 294 U.S. 580 at 584, 55 S.Ct. 538, at 540, 79 L.Ed. 1070 (1935).

## CONCLUSION

Therefore it is the conclusion of the court that 11 U.S.C. § 522(f) can be applied retrospectively by the debtors to avoid a nonpurchase-money security interest in household goods, claimed exempt by the debtors, which was granted to the creditor prior to the effective date of the Bankruptcy Code. Therefore, the Reclamation Complaint should be dismissed.