**In the Matter of Maurice Elzie CAMPBELL, Debtor.**

**Maurice Elzie CAMPBELL, 2322 Newport Avenue, Dayton, Ohio 45405, Plaintiff,**

v.

**AVCO FINANCIAL SERVICES, 3058 Woodman Drive, Kettering, Ohio 45420, Defendant.**

**Bankruptcy No. 3–80–01094.**
**Adv. No. 3–80–0350.**

United States Bankruptcy Court, S. D. Ohio, W. D.

Jan. 8, 1981.

R. L. Cousineau, Dayton, Ohio, for defendant.

Donald F. Harker, III, Dayton, Ohio, for plaintiff; Ira Rubin, Dayton, Ohio, of counsel.

John T. Ducker, Dayton, Ohio, trustee.

CHARLES A. ANDERSON, Bankruptcy Judge.

This matter is before the Court on the debtor's complaint to avoid a lien of AVCO Financial Services pursuant to 11 U.S.C. § 522(f)(2). AVCO filed an answer objecting to the avoidance. The following decision is based upon evidence submitted at the trial held August 20, 1980 and on the parties' post-trial memoranda of law.

The facts of this case are undisputed. The debtor filed his petition for relief under Chapter 7 of Title 11, United States Code on April 22, 1980. His Schedules of Debts and Property list AVCO as a secured creditor with a nonpossessory, nonpurchase-money security interest in certain items of the debtor's household goods. The Schedules further show that the debtor has claimed all these items of collateral as exempt property. On June 26, 1980, the debtor filed this complaint to avoid AVCO's lien pursuant to 11 U.S.C. § 522(f). The parties do not dispute the nature of the subject property. AVCO's answer alleges that the substantive

provisions of the Bankruptcy Reform Act of 1978 apply to obligations created after November 6, 1978; therefore, because its security agreement was executed on July 31, 1978, the provisions of that Act cannot apply to its claim against the debtor. The retroactive application of this Act (alleges AVCO) would deny this creditor of a specific property right without due process of law.[1]

The issue presented is whether the application of 11 U.S.C. § 522(f) to the facts of this particular case is violative of the due process guarantee of the Fifth Amendment of the United States Constitution. We have addressed this issue in a previous decision. See *Rutherford, Jr. et ux. v. Associates Financial Services Company of Ohio*, 4 B.R. 510 [Bkrtcy.1980] 3 Bankr.L.Rep. (CCH) ¶ 67,534.[2]

Our decision in *Rutherford* espouses the concept that we must look to the value of the property in which a creditor has a security interest and the nature and purpose of the security interest when determining whether a creditor is truly being deprived of a property right or is merely being deprived of a collection remedy available by contract. We stated that,

> it is the opinion of this court that the basic inquiry should be into the type of collateral covered by the security agreement and the impairment as postulated. The judicial focus is upon the practical aspects and the true purpose and effect of this agreement. In addition to the monetary aspects often mentioned, and even more crucial, is the permanence of the nature of the collateral and the long term purport of the agreement. Concomitantly, what was the real function of the security interest in the market place?

Was value of the collateral a *sine qua non* to granting the loan, or was the agreement primarily intended to reduce the possibility of fickle defaults? In other words was the security intended essentially as psychological or sociological thrust, rather than purely economic?

4 B.R. 510, 3 Bankr.L.Rep. (CCH) ¶ 67,534 at p. 77,874 77,875.

Although we did not make direct reference to *Louisville Joint Stock Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), relied upon by AVCO, we believe this concept suffices to reconcile the decisions illustrated by the additional quotations set forth below.

In *Centran Bank of Akron v. Ambrose*, 4 B.R. 395 [1980] 3 Bankr.L.Rep. (CCH) ¶ 67,589, Judge White later elaborated on the *Rutherford* rationale, that the purpose of taking the security interest in property and the nature of the property itself is essential to determining the extent of the creditor's property interests.

Judge White said,

> The underlying principle of contracts relating to pledges of property as security for debts was described in *In re Carter*, 56 F.Supp. 385 (W.D.Va.1944) as the right of the creditor to acquire property pledged as security in lieu of his debt in case the debt is not paid. *The creditor lends money because of his belief that the property is worth at least the amount of the loan and because of his willingness to take the property in lieu of the debt in case the debt is not paid* ... (emphasis in original). *Centran Bank of Akron v. Ambrose, supra* at p. 77,978.

---

1. AVCO further alleges that the property claimed exempt exceeds the allowable amount as set forth in Ohio Revised Code § 2329.-66(A)(4)(b) and (c); however, the defendant did not offer any evidence to support its allegation, nor did it address this issue in its brief. Consequently, we find the debtor has met his burden of proving the value of said items.

2. As in the case at bar, the creditor in *Rutherford* obtained its security interest in the debtor's property prior to the enactment of the Bankruptcy Reform Act of 1978. Although we stated that "the only issue submitted is whether Section 11 U.S.C. § 522(f) of the Bankruptcy Code can be applied to avoid a security interest antedating the effective date of this federal statute, on 9 October 1979", we believe that our reasoning is applicable to the present case because we were proceeding with the knowledge that the *Rutherford* security interest was created on or about November 13, 1977.

Judge Pettigrew also later recognized the importance of keeping the proper perspective when determining the extent of a creditor's property interest in collateral. He found,

A blanket lien of the sort under discussion here gives the creditor rights in specific property, but such rights are illusory in that the value of that property in the hands of the creditor is usually negligible. As stated in the legislative history, the value of the blanket lien in all of the debtor's household possessions is as a remedy to enforce payment, post bankruptcy, of a contractual obligation to repay money. Further the security agreement purporting to create rights in the household goods of the debtor was entered subject to the possible exercise of the rightful authority of Congress to legislate on the subject of bankruptcy.

*In re Carol Sue Goodrich*, 7 B.R. 590, 594, (S.D.Ohio Bk. Div. 1980) at p. 5. The legislative history Judge Pettigrew refers to is that relating to 11 U.S.C. § 522(f). Congress said,

Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor's belongings and obtain a waiver by the debtor of his exemptions. In most of these cases, the debtor is unaware of the consequences of the forms he signs. The creditor's experience provides him with a substantial advantage. If the debtor encounters financial difficulty, creditors often use threats of repossession of all of the debtor's household goods as a means of obtaining payment.

In fact, were the creditor to carry through on his threat and foreclose on the property, he would receive little, for household goods have little resale value. They are far more valuable to the creditors in the debtor's hands as they provide a credible basis for the threat, because the replacement costs of the goods are generally high. The creditors rarely repossess, and debtors, ignorant of the creditors' true intentions, are coerced into payments they simply cannot afford to make.

... Such security interests have too often been used by over-reaching creditors. This bill eliminates any unfair advantage the creditors have.

House Report No. 95-595, 95th Cong., 1st Sess. (1977) 126-127, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6088.

We emphasize that the fundamental difference between the effect of the Fraser-Lemke Act treated in *Louisville Joint Stock Bank v. Radford, supra,* and § 522(f) of the Bankruptcy Reform Act of 1978 is that the former affected mortgages in real property which were taken with the reasonable expectation that said property would be valuable enough to satisfy a debt upon foreclosure in the event that the mortgagee defaulted on the subject contract. Therefore, the creditors affected by the Fraser-Lemke Act's restraint on the enforcement of valid liens were deprived of a substantial consideration for their bargain. The evidence in the *Radford* case indicates that at the time the loan was made, the Louisville Bank believed the property was worth approximately twice as much as the loan amount. 295 U.S. 555, at 573 n. 3, 55 S.Ct. at 855 n. 3. Thus, we can infer that a primary reason the Bank was willing to extend a loan to the Radford's was its confidence that it could exercise its security interest in the event of the Radford's default and still realize the benefit of its bargain. This claim can hardly be made by any creditor who lends on the basis of the type of collateral subject to the provisions of § 522(f). It is an accepted truism that used household goods generally do not have a substantial resale value, if any. In the case at bar, if AVCO Financial Services were to repossess the subject property, it would realize less than one-third of its claim. (This is evidenced by the debtor's valuation of the property at $800.00 set against the balance of $2,700.00 due on AVCO's claim). Thus, the defendant cannot say that it will be deprived of a property right of substantial value, assuming, *arguendo,* that the collateral is really merchantable.

One element of § 522(f) cannot be too strongly emphasized—the only types of liens which can be avoided under that section are liens which impair exemptions. Modern bankruptcy has consistently allowed certain property to remain exempt from execution by creditors. Section 522(f) enlarges this long-established facet of bankruptcy law and does not add a new concept to the law. We pointed out in *Rutherford* that,

> Balanced against such factors as [the purpose of the lien and value of collateral] is the acculturation of the family unit and the now axiomatic purpose and policy of exemption laws to afford a minimum degree of protection to the family debtor, and indirectly to the public welfare. With such an opportunity for support, the family is far less likely to become a burden upon the general public.

Judge White dwells on the same view, as later expressed in *Centran Bank v. Ambrose* where he finds,

> Section 522(f) of the Bankruptcy Code does not make it possible for the debtor to avoid all nonpurchase-money security interests in exempt property. The debtor may only avoid a nonpurchase-money security interest in three categories of property: (1) household goods, (2) tools of trade, and (3) prescribed health aids, to the extent that the property could have been exempted in the absence of such lien. These three categories of property encompass property that is required for the maintenance, health, and welfare for the debtor and his family. The purpose of an exemption is not for the personal privilege of the debtor but for the benefit of his family who may be destitute and the public who might otherwise be burdened with the support of an insolvent debtor's family. *In re Perry*, 225 F.Supp. 481 at 481–482 (N.D.Ohio 1963). *Centran Bank v. Ambrose, supra* at p. 77,979.

Our conclusion in *Rutherford* is equally applicable to the case at bar, namely:

> In summary, whenever such a financial arrangement is executed between a lender and the chief support of a family unit, there must be the implied understanding and condition that, in the event of a subsequent bankruptcy context, the paramount social purpose and family needs will negate such a contractual purpose. Whenever a lender takes vital family necessaries as collateral, there is no true impairment of a contract, but, rather, an implied contractual risk. Under such a conclusion the lender has assumed the acknowledged risk of an improvident loan, assuming no question of dischargeability is justiciable.

*Rutherford, Jr. v. Associates, supra* 4 B.R. 510, 3 Bankr.L.Rep. at p. 77,875.

Based upon our decision in *Rutherford, Jr. v. Associates, supra*, and amplified by the above-cited authorities, it is hereby *ORDERED, ADJUDGED AND DECREED* that 11 U.S.C. § 522(f) does not cause a deprivation of the defendant's Fifth Amendment rights to due process under the facts of this case, it is further

*ORDERED, ADJUDGED AND DECREED* that the plaintiff may properly avoid the enforcement of defendant's lien through the provisions of said § 522(f).