In re Rosetta Vivian STUMP, Debtor.

Rosetta Vivian STUMP, Plaintiff,

and

United States of America, Intervenor,

v.

BENEFICIAL FINANCE COMPANY OF SOUTH DAKOTA, Sioux Falls, South Dakota, Defendant.

Bankruptcy No. 480–00184.
Adv. No. 480–0104.

United States Bankruptcy Court,
D. South Dakota.

Jan. 23, 1981.

J. Bruce Blake, Sioux Falls, S. D., for plaintiff.

John C. Quaintance, Quaintance & Swanson, Sioux Falls, S. D., for defendant.

Terry L. Pechota, U. S. Atty., Sioux Falls, S. D., for intervenor.

PEDER K. ECKER, Bankruptcy Judge.

Rosetta Vivian Stump, a Chapter 7 Debtor, filed a Complaint to avoid Beneficial Finance Company's, hereinafter Creditor's, nonpossessory, nonpurchase-money security interest in the household goods that she has claimed as exempt. Creditor's Answer alleged as an affirmative defense that retrospective application of 11 U.S.C. Section 522(f) violates the due process clause of the Fifth Amendment to the United States Constitution.

The Court held a hearing at which counsel stipulated to the facts. Due to the issue of the constitutionality of 11 U.S.C. Section 522(f), this Court notified the Office of the Attorney General of the United States. Counsel for Debtor and Creditor stipulated to the intervention of the Attorney General of the United States in this case. Based on the pleadings, the stipulated facts, and the briefs supplied by the parties, this Bankruptcy Court makes the following Findings of Fact and Conclusions of Law.

## FACTS

Debtor obtained a loan in the principal amount of $4,357.45 from Creditor on September 27, 1978. In exchange for that loan, Debtor signed a promissory note and Security Agreement dated September 27, 1978.

Under the September 27, 1978, Security Agreement, Debtor granted Creditor a security interest in the personal property described in the Schedule A located at the bottom of the Security Agreement:

### SCHEDULE "A"

A certain motor vehicle, complete with all parts, attachments, accessories and equipment, now located at the address of the Debtor indicated in the box above, to wit: Name Serial No. Body Style Model Year Other Identification

Liens and Encumbrances:

Delete in its entirety the description of any category of property not taken as security for a loan.

(a) All of the consumer goods including household furniture, television sets, electrical appliances, stereo phonographs, furnishings, carpets, draperies, chinaware and other household goods of every kind now owned by Debtors and located in or about the Debtor's place of residence at the address shown hereon in the box above, as more particularly described in the form entitled "Identification of Security" and dated _____, 19____ which hereby is incorporated into the Security Agreement by reference.

(b) Other (describe).

Creditor's business records did not contain a form entitled Identification of Security.

The promissory note of September 27, 1978, recited that Creditor had a security interest in a '65 Ford and '69 Dodge, plus all the household goods described in the Security Agreement.

Creditor introduced into evidence an unsigned Appraisal Record, dated February 20, 1976, that listed Debtor's household goods, etc. Debtor had filled out the Appraisal Record in connection with a prior loan transaction. Further, Creditor introduced into evidence a Schedule A form that was part of a Security Agreement dated March 21, 1975. Creditor had purchased the March 21, 1975, Security Agreement from a third party.

Debtor claimed as exempt those items covered by the September 27, 1978, Security Agreement. Debtor's schedules placed a market value of $865.00 on the items covered by the September 27, 1978, Security Agreement.

On March 22, 1973, Creditor filed a Financing Statement covering "all of the household goods now owned or hereafter acquired in replacement thereof and now or hereafter located at the residence of Debtor(s) ..." On January 18, 1978, Creditor filed a Continuation Statement of the March 22, 1973, Financing Statement.

## ISSUES

The issues presented to the Court are: (1) Whether the September 27, 1978, Security Agreement adequately described the collateral held as security by Creditor; (2) Whether Creditor has a perfected security interest when the Financing Statement is filed prior to the Security Agreement; and (3) Whether retrospective application of 11 U.S.C. Section 522(f) to avoid a lien antedating October 1, 1979, the effective date of the Bankruptcy Reform Act of 1978, violates the due process clause of the Fifth Amendment to the United States Constitution.

#### (1) *Sufficiency of Description*

SDCL 57A–9–203 provides that a security interest is not enforceable against a debtor unless, "(b) The Debtor has signed a security agreement which contains a description of the collateral . . .". SDCL 57–9–110, title Sufficiency of Description, provides that "for the purposes of this chapter any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described;".

■ Creditor would have this Court use the Appraisal Record dated February 20, 1976, and the Schedule A form attached to the March 21, 1975, Security Agreement, in place of the form entitled Identification of Security, to further identify the collateral Creditor has a security interest in. However, nothing in the record substantiates Creditor's claim that the parties intended the documents to be part of the September 27, 1978, Security Agreement. Thus, the Court will not consider the two documents in determining whether the September 27, 1978, Security Agreement sufficiently described the collateral so as to comply with state law.

■ Although the description set out in Schedule A does not contain a specific listing of Debtor's individual household items, it is sufficient to reasonably identify what collateral the parties intended Creditor to have a security interest in. Clearly, Debtor understood that Creditor would have as security the items she now claims as exempt. For purposes of SDCL 57A–9–110, it is not necessary to specifically describe each table, couch, television set, etc.

This Court holds that the September 27, 1978, Security Agreement complied with the requirement of SDCL 57A–9–203 that it contain a description of the collateral.

#### (2) *Filing of Financing Statement*

Creditor filed a Financing Statement on March 22, 1973, covering all household goods. On January 18, 1978, Creditor filed a Continuation Statement continuing the March 22, 1973, Financing Statement. On September 27, 1978, Debtor signed the Security Agreement. The issue is whether Creditor has a perfected security interest when the Financing Statement is filed prior to the Security Agreement.

Under SDCL 57A–9–403 a filed Financing Statement is effective for a period of five years from the date of filing and thereafter for a period of sixty days. Further, if a secured party files a Continuation Statement within six months before the expiration of the five year period, the effectiveness of the original statement is continued for another five years. A secured party can file succeeding continuation statements in the same matter to continue the effectiveness of the original statement.

■ A properly filed Financing Statement, kept current by continuation statements, is sufficient to perfect a security interest created by a later security agreement between the same creditor and debtor covering the same collateral. *In re Gilchrist Co.*, 16 UCC Rep. 1384 (DCED Pa., Bankr.J.1975), affd. 18 UCC Rep. 242; 403 F.Supp. 197 (DCED Pa.1975), affd. by order 535 F.2d 1246 (3rd Cir. 1976); *In re Rivet*, 6 UCC Rep. 460, 299 F.Supp. 374 (DCED Mich.1969); and *James Talcott, Inc. v. Franklin National Bank of Minneapolis*, 10 UCC Rep. 11, 292 Minn. 277, 194 N.W.2d 775 (1972). A creditor is not required to file a Financing Statement after every transaction.

■ This Court holds that Creditor has a perfected nonpossessory, nonpurchase-money security interest in Debtor's household goods that she has now claimed as exempt.

#### (3) *11 U.S.C. Section 522(f)*

11 U.S.C. Section 522(f) provides: "Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
(1) a judicial lien; or
(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor."

The Court must first consider whether 11 U.S.C. Section 522(f) operates retrospectively, or prospectively only. The question as to whether a statute operates retrospectively, or prospectively only, is one of legislative intent. *Hassett v. Welch*, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858 (1938). In *Ginsberg v. Lindel*, 107 F.2d 721 (8th Cir. 1939), the Court held that an amendment to the Bankruptcy Act that reduced the amount a landlord could recover as a priority under a landlord's lien for past due rent operated prospectively only. In so holding, the Court commented:

"There is nothing contained in the Chandler Act to indicate that Congress intended that section 64, sub. a, should be construed retrospectively; and in the absence of explicit language requiring such construction we are not disposed so to construe it, especially when to do so would result in depriving a citizen of a vested right. It is the general rule that a retrospective operation will not be given to a statute which interferes with antecedent rights, unless such be the unequivocal and inflexible impact of its terms and the manifest intention of the legislature." (at 726)

■ The Bankruptcy Reform Act of 1978 (referred to as the Bankruptcy Code), enacted November 6, 1978, took effect on October 1, 1979. All petitions filed after October 1, 1979, are governed by the Bankruptcy Code. In accordance with Section 403(a) of Title IV of the Bankruptcy Reform Act of 1978, Pub.L. 95–598, which provides that:

(a) A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted.

Only cases commenced prior to October 1, 1979, are to be governed by the former Bankruptcy Act. Section 401(a), Title IV, Pub.L. 95–598, repeals the former Bankruptcy Act for all other purposes. Thus, if the Court applied the provision of the Bankruptcy Code prospectively only, there would be no bankruptcy laws in effect to deal with those debts incurred prior to October 1, 1979, that are listed in petitions filed after October 1, 1979. That Congress intended such a result is unbelievable.

Further, Congress enacted 11 U.S.C. Section 522(f) to protect the debtor's exemptions, his discharge, and thus his fresh start. The House Judiciary Committee's Report to the House, in explaining the need for 11 U.S.C. Section 522(f) stated:

"Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor's belongings, and obtains a waiver by the debtor of his exemptions. In most of these cases, the debtor is unaware of the consequences of the forms he signs. The creditor's experience provides him with a substantial advantage. If the debtor encounters financial difficulty, creditors often use threats of repossession of all of the debtor's household goods as a means of obtaining payment.

In fact, were the creditor to carry through on his threat and foreclose on the property, he would receive little, for household goods have little resale value. They are far more valuable to the creditor in the debtor's hands, for they provide a credible basis for the threat, because the replacement costs of the goods are generally high. Thus, creditors rarely re-

possess, and debtors, ignorant of the creditors' true intentions, are coerced into payments they simply cannot afford to make.

The exemption provision allows the debtor, after bankruptcy has been filed, and creditor collection techniques have been stayed, to undo the consequences of a contract of adhesion, signed in ignorance, by permitting the invalidation of nonpurchase money interest in household goods. Such security interests have too often been used by overreaching creditors. The bill eliminates any unfair advantage creditors have." (H.R.Rep.No.95–595, 95th Cong., 1st Sess. (1977) 126–127, U.S.Code Cong. & Admin.News, 1978, pp. 5787, 6088.)

Were this Court to apply 11 U.S.C. Section 522(f) prospectively only, it would take years to successfully eradicate the evils Congress was concerned with.

This Bankruptcy Court disagrees with the decision of *In re Pierce*, 4 B.R. 671 (Bkrtcy. W.D.Okl.1980), and *In re Hawley*, 4 B.R. 147 (Bkrtcy.Or.1980), that the Bankruptcy Reform Act of 1978 did not mandate or intend 11 U.S.C. Section 522(f) to operate retrospectively, and thus 11 U.S.C. Section 522(f) should operate prospectively only. The wording by Congress of the Bankruptcy Reform Act of 1978 and the legislative intent behind the enactment of 11 U.S.C. Section 522(f) clearly indicate that Congress intended the substantive provisions of the Bankruptcy Reform Act of 1978 to operate retrospectively as well as prospectively. This Court will apply 11 U.S.C. Section 522(f) retrospectively.

Having determined that 11 U.S.C. Section 522(f) operates retrospectively, this Court must now decide whether retrospective application of 11 U.S.C. Section 522(f) to avoid liens antedating October 1, 1979, violates the due process clause of the Fifth Amendment to the United States Constitution.

Article 1, Section 8, Clause 5 of the United States Constitution expressly confers upon Congress the power "To establish . . . uniform laws on the subject of bankruptcies throughout the United States." Congress, in the exercise of that power, while not prohibited from impairing the obligations of contracts, is subject to the due process clause of the Fifth Amendment. 9 Am. Jur.2d Bankruptcy Sec. 18, speaking on Congress's right to legislate bankruptcy laws that impair contractual obligations, comments:

"The power of Congress to impair the obligation of a contract under its power to legislate on the subject of bankruptcies does not permit or countenance the total or partial destruction of vested property rights, and if such legislation substantially impairs vested rights, it violates the Fifth Amendment and is unconstitutional. But since any exercise of the bankruptcy power impairs the obligation of contracts, such impairment is not to be taken as in itself a denial of the process, and statutes dealing with bankruptcy matters are, as a general rule, sustained on the ground that they effect the remedy, and not vested rights."

The Court, in an attempt to better understand and clarify the principles discussed by Am.Jur.2d, reviewed the case law cited by Am.Jur. and the parties in their briefs.

In *Louisville Joint-Stock Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), hereinafter referred to as *Radford*, the Supreme Court held that the Frazier Lemke Act, by substantially impairing a mortgagee's right in specific property, violated the due process clause of the Fifth Amendment. The Frazier Lemke Act allowed a debtor to stay a mortgagee from foreclosing on his farm for five years, during which time the debtor could retain possession of the property by paying a reasonable rental rate. At the end of the five year stay the debtor could purchase the property by paying into the court the appraised value of the property. During the five year stay, the mortgagee lost whatever rights it had under the terms of the mortgage contract.

The Supreme Court, in striking down the Frazier Lemke Act as a violation of the Fifth Amendment, said:

"The bankruptcy power, like the other great substantive powers of Congress, is

subject to the Fifth Amendment. Under the bankruptcy power Congress may discharge the debtor's personal obligation, because, unlike the states, it is not prohibited from impairing the obligations of contracts. (Cita.) But the effect of the act here complained of is not the discharge of Radford's personal obligation. It is the taking of substantive rights in specific property acquired by the bank prior to the act." (295 U.S. at 589–590, 55 S.Ct. at 863),

and further on the Supreme Court commented:

"The province of the Court is limited to deciding whether the Frazier-Lemke Act (Cita.) as applied has taken from the bank without compensation, and given to Radford, rights in specific property which are of substantial value. * * * As we conclude that the act as applied has done so, we must hold it void, for the Fifth Amendment commands that, however great the nations need, private property shall not be thus taken even for wholly public use without just compensation." (295 U.S. at 601–602, 55 S.Ct. at 869.)

In the well written decisions of *Rodrock v. Security Industrial Bank*, 3 B.R. 629 (Bkrtcy.Colo.1980), *In re Hoops*, 3 B.R. 635 (Colo.1980), *In re Jackson*, 4 B.R. 293 (Bkrtcy.Colo.1980), and *In re Lucero*, 4 B.R. 659, 2 C.B.C.2d 532 (Bkrtcy.Colo.1980), the Colorado Bankruptcy Courts, applying *Radford*, held that retrospective applications of 11 U.S.C. Section 522(f) violated creditors' Fifth Amendment right to due process by substantially impairing the creditors' right to receive the collateral the creditors had security interests in.

The Colorado Courts rejected the government's argument that later case law has modified the holding of *Radford* to the extent that it is no longer applicable. The Colorado Courts reviewed the leading cases and concluded that, although the holding of *Radford* has been modified, it still stands for the proposition that Congress, in exercising its power to legislate bankruptcy laws, cannot partially or totally destroy a creditor's vested right to specific property,

and, if it does so, Congress violates the Fifth Amendment due process clause. The Court in *Rodrock* states:

"As I view this case, the constitutional difficulty § 522(f) presents is the means chosen by Congress for achieving a laudable purpose. It seems evident that legislation which effects the total deprivation of substantive right in specific property antedating the statute is unreasonable. Although it appears that Congress had a substantial motivation for enactment of § 522(f), and while the purported goal seems proper in light of the "fresh start" objectives of the bankruptcy law, I firmly believe that Radford teaches us that such an objective cannot be achieved at the expense of creditors whose rights in specific property have attached prior to the enactment of the law." (3 B.R. at 633–634.)

This Bankruptcy Court elects not to follow the rationale of the Colorado cases. Later case law, although not expressly overruling *Radford*, has modified and limited its holding.

In *Wright v. Vinton Branch of the Mountain Trust Bank of Roanoke*, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937), hereinafter referred to as *Wright*, the Supreme Court upheld as constitutional a post *Radford* amendment to the Frazier Lemke Act that reduced the period of the stay from five years to three years and provided that mortgagees had the right to have the property sold and the mortgage satisfied within the three year period if good cause could be shown to the bankruptcy court. The Supreme Court, after finding that the amendment to the Frazier Lemke Act modified the mortgagee's rights in specific property, held that the modification did not amount to such an impairment of the mortgagee's right as to constitute a violation of the Fifth Amendment's due process clause. In so holding the Supreme Court stated:

"The question * * * is not whether the act does more than modify remedial rights. It is whether the legislation modifies the secured creditor's rights, remedial or substantive, to such an extent as to

deny the due process of law by the Fifth Amendment." (300 U.S. at 470, 57 S.Ct. at 566.)

In *Wright*, the Supreme Court, although not overruling *Radford*, clearly modified the principles it applied in *Radford*. This Bankruptcy Court agrees wholeheartedly with the comment made by the Honorable Judge Coutraken in his decision of *In re Beck*, 4 B.R. 661 (Bkrtcy.C.D.Ill.1980), that:

"In reading the *Wright* case, I can see why the Trial and Appellate Courts held the Frazier Lemke amendment unconstitutional. They were using naturally the guidelines of the *Radford* case in deciding the constitutionality of the amended statute, and they were reversed. I dare say that when the case reached the Supreme Court, the justices viewed the new Frazier Lemke amendment through more progressive and less exacting eyes than when they had perused and decided the *Radford* case." (4 B.R. at 664.)

Judge Coutraken continued on to hold that Congress acted reasonably in its desire to rehabilitate the debtor and that retrospective application of 11 U.S.C. Section 522(f) did not affect the rights of secured creditors to the extent that they were denied due process.[1]

In *Kuehner v. Irving Trust Co.*, 299 U.S. 445, 57 S.Ct. 298, 81 L.Ed. 340 (1937), the Supreme Court, in holding that a bankruptcy statute that limited a landlord's indemnification for loss of future rents was not a denial of due process, said, "The question is whether the remedy is circumscribed in so unreasonable and arbitrary way as to deny due process." (299 U.S. at 452, 57 S.Ct. at 302.)

In *Wright v. Union Central Ins. Co.*, 304 U.S. 502, 58 S.Ct. 1025, 82 L.Ed. 1490 (1940), the Supreme Court held that the Frazier Lemke Act did not violate the due process clause of the Fifth Amendment when it permitted a mortgagor to purchase mortgaged property at its appraised price after judgment had been entered allowing foreclosure and the period for redemption had run. The Supreme Court stated:

"The mortgage contract was made subject to constitutional power in the Congress to legislate on the subject of bankruptcies. Impliedly, this was written into the contract between petitioners and respondent. "Not only are existing laws read into contracts in order to fix obligations as between parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order." And the fact that in this case the purchaser at the foreclosure sale was also the mortgagee is not a determining factor. Any purchaser at a judicial sale must purchase subject to the possibility of the exercise of the bankruptcy power in a manner consonant with the Fifth Amendment." (304 U.S. at 516, 58 S.Ct. at 1033.)

This Bankruptcy Court, after reviewing the cases following *Radford*, concludes that *Radford* has been modified to the extent that Congress, in the exercise of its bankruptcy power, may legislate bankruptcy laws that affect creditors' rights in specific property. In determining whether the bankruptcy legislation modifies the creditors' rights to such an extent as to deny the creditors due process, it is important to remember that a statute is presumed constitutional and the party challenging it has the burden to sustain unconstitutionality.

In *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752

---

1. The cases of *In the Matter of Rutherford*, 4 B.R. 510 (Bkrtcy.S.D.Ohio 1980), *In re Head*, 4 B.R. 521 (Bkrtcy.Tenn.1980), *In re Curry*, 5 B.R. 282, 2 C.B.C.2d 710 (Bkrtcy.N.D.Ohio 1980), and *In the Matter of Primm*, 6 B.R. 142, 2 C.B.C.2d 1170 (Bkrtcy.Kan.1980) held that retrospective application of 11 U.S.C. Section 522(f) to avoid liens antedating October 1, 1979, does not violate the Fifth Amendment's due process clause. The Courts in *In re Amb-*

*rose*, 4 B.R. 395 (Bkrtcy.N.D.Ohio 1980), *In the Matter of Boulton*, 4 B.R. 498 (Bkrtcy.S.D.Iowa 1980), and *In the Matter of Baker Et Al.*, 5 B.R. 397, 2 C.B.C.2d 844 (Bkrtcy.W.D.Miss.1980), noting that a statute is presumed to be constitutional and that trial courts should be slow to find otherwise where any doubt exists, held that retrospective application of 11 U.S.C. Section 522(f) to avoid liens antedating October 1, 1979, does not violate due process.

(1976), the Supreme Court, in holding that retrospective application of the Black Lung Benefit Act of 1972, which required coal mine operators to compensate former employees who had terminated their employment before the Act was passed, did not violate the due process clause of the Fifth Amendment, said at 96 S.Ct. 2892:

"It is by now well established that legislative Acts adjusting burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on the one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." See, e. g., *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); *Williamson v. Lee Optical Co.*, 348 U.S. 483, 487-488, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955).

Here, as in the *Wright* case, Congress has enacted bankruptcy legislation that has altered a creditor's right to enforce a specific remedy and recover specific property. 11 U.S.C. Section 522(f) modifies creditors' rights to specific property by permitting debtors to avoid nonpossessory, nonpurchase money liens on certain exempt items of property. In addition, under the provisions of the Bankruptcy Code, creditors retain their liens, if any, on the nonexempt property and are entitled to file proofs of claims as unsecured claimants for the amounts of the liens avoided.

After reviewing the legislative history behind the enactment of 11 U.S.C. Section 522(f), this Court concludes that Congress did not act arbitrarily or unreasonably in enacting 522(f). Although 11 U.S.C. Section 522(f) does modify creditors' rights in certain exempt items of property, this Bankruptcy Court holds that retrospective application of 11 U.S.C. Section 522(f) to avoid liens antedating October 1, 1979, does not modify the creditors' right to the property to such an extent that the creditor is denied due process as guaranteed by the Fifth Amendment. Debtor is entitled to avoid Creditor's nonpossessory, nonpurchase-money security interest in Debtor's household goods.

## CONCLUSION

Debtor is entitled to avoid Creditor's perfected nonpossessory, nonpurchase-money security interest in Debtor's household goods that she has claimed as exempt. Retrospective application of 11 U.S.C. Section 522(f) does not modify Creditor's right to specific property to the extent that Creditor's right to due process under the Fifth Amendment is violated.

This Memorandum Decision shall constitute Findings of Fact and Conclusions of Law. Debtor's Counsel shall submit a Judgment consistent with the foregoing.