**In re Donald K. PAPE, Debtor.**

**Bankruptcy No. 80–02026.**

United States Bankruptcy Court,
N. D. Florida,
Panama City Division.

Dec. 3, 1980.

Jerry W. Gerde, Panama City, Fla., for debtor.

Charles Wynn, Marianna, Fla., for U. S. Credit Life.

## OPINION

N. SANDERS SAULS, Bankruptcy Judge.

The debtor seeks under Section 522(f) of Title 11 of the United States Code to avoid two nonpossessory, nonpurchase money security interests that are held by two creditors encumbering all of the debtor's household furnishings. The property is claimed to be exempt as being tenancy by the entirety property. The wife has not filed and no proceeding with respect to her is pending. One of the security interests in said property was jointly granted by the debtor husband and his wife in connection with the incurring of a joint obligation in January of 1978. The other security interest was jointly granted in connection with the incurring of a joint obligation in April of 1979.

Aside from the constitutional question with respect to the retroactive application of Section 522(f), the creditors contend that the provisions of Section 522(f) are, in any event, not applicable to the tenancy by the entirety property here involved.

They argue that to be avoided the lien must, as provided in the introductory language of Section 522(f), "impair an exemption to which the debtor *would have been entitled* under subsection (b) of this section." Section 522(b) provides that a debtor may exempt any interest as a tenant by the entirety that he had immediately before the commencement of the case "to the extent that such interest as a tenant by the entirety . . . is exempt from process under applicable nonbankruptcy law." These creditors argue (1) that immediately prior to the commencement of the case the debtor's tenancy by the entirety interest was not exempt from their process or their lien; (2) that, being joint creditors of both the husband and wife, the tenancy by the entirety property was subject to the satisfaction of their joint debts immediately prior to the case, and; (3) that, as a result, the debtor would not have been entitled to any exemption as to them under Section 522(b). As liens may be avoided under Section 522(f) only to the extent that a lien impairs an exemption to which the debtor would have been entitled, these creditors contend that, since he had no exemption as to them, no exemption exists that their liens could impair.

The debtor, in essence, argues (1) that Section 522(f) applies "notwithstanding any waiver of exemptions"; (2) that the granting of the security interest constituted a waiver; (3) that the debtor would have been entitled to the exemption under Section 522(b) but for the waiver in the granting of the security interests; and, (4) hence,

Section 522(f) expressly applies notwithstanding any such waiver.

A review of the legislative history reveals that it was the intent of Congress to permit the avoidance of all judicial liens generally as to all property normally exempt but for such judicial liens and the avoidance of a narrow category of contractual liens upon a narrow category of property normally exempt but for such contractual liens, i. e. those which are "nonpossessory, nonpurchase money" security interests encumbering the narrow category of property consisting roughly of household goods, tools of trade and health aids. See, Report of the Commission on the Bankruptcy Laws of the United States [hereinafter Commission Report], H.R. Doc. No. 137, 93 Cong., 1st Sess. Pt. I, 170–173; Pt. II, 125–130; H.R. 95–595, pp. 126–127, 171, 360–363; S.R. 95–989, p. 76, U.S.Code Cong. & Admin.News 1978, p. 5787; 124 Cong.Rec.H 11096 (daily ed. Sept. 28, 1978).

As reflected in H.R. 95–595 at p. 362 and S.R. 95–989 at p. 76, U.S.Code Cong. & Admin.News 1978, p. 6318:

> "The debtor may avoid a judicial lien on any property to the extent that the property *could have been* exempted *in the absence* of the lien, *and may similarly avoid a nonpurchase–money security* interest in certain household and personal goods. The avoiding power is independent of any waiver of exemption." [emphasis supplied.]

There can be no doubt that it was the intent of Congress to provide debtors with their exempt property free from prior judicial liens and to provide debtors with certain specific items of exempt property free from the narrow category of prior contractual liens specified as nonpossessory, nonpurchase money security interests.

█ Whether one agrees or disagrees with the approach taken, it is apparent to this court that, notwithstanding the unnecessarily confusing language employed, subsections (b) and (f) must be construed to permit the avoidance of judicial liens and nonpossessory, nonpurchase money liens [security interests] upon property, as specified, that would be eligible for exemption but for such judicial or nonpossessory, nonpurchase money liens.

It would have been much less confusing to have provided simply, as the Commission on the Bankruptcy Laws of the United States basically did in its report [Commission Report, Pt. II, p. 126] that any lien obtainable by judicial proceedings would be unenforceable against property otherwise claimed as exempt and that any lien [security interest] created by contract would be unenforceable, except with respect to purchase money obligations or possessory liens, against property otherwise claimed as exempt.

Blanket waivers of exemptions in any unsecured debt obligations or instruments [contracts or notes] are expressly rendered unenforceable by Section 522(c). As a result, in general, creditors in all states will now be allowed to prevail over allowable exemptions only if security has been taken. In recognition of the possibility that creditors would naturally seek and obtain security, both as to existing and after–acquired assets, rather than rely on waivers, an exception to this rule with respect to the taking of security was carved out in Section 522(f). See, Commission Report, Pt. I, p. 173. Thus all liens or security interests will continue to prevail over allowable exemptions with the exception of judicial liens and nonpossessory, nonpurchase money security interests. Although the exception with respect to judicial liens applies to all exempt property, the exception with respect to nonpossessory, nonpurchase money security interests applies only to certain specific items of exempt property.

Under the new law, as under the old law, other than the foregoing exceptions as to judicial liens and the very restricted category of nonpossessory, nonpurchase money security interests, neither the discharge of a debt [which releases only a debtor's personal liability] nor the exempt status of property will preclude the enforcement of valid liens. 3 *Collier* (15th Ed.) § 506.07; 3 *Collier* (15th Ed.) § 522.27; 1A *Collier* (14th Ed.) § 17.29; 4B *Collier* (14th Ed.) § 70.70. See also, H.R. 95–595, p. 361, wherein it is stated:

"The bankruptcy discharge will not prevent enforcement of valid liens. The rule of *Long v. Bullard*, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), is accepted with respect to the enforcement of valid liens on nonexempt property as well as on exempt property. Cf. *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 583, 55 S.Ct. 854, 860, 79 L.Ed. 1593 (1935)."

The question remains, however, as to whether the new avoidance power contained in Section 522(f) may be constitutionally applied to the liens [security interests] asserted by the creditors herein, both of which were acquired prior to the effective date of the new law, to wit: October 1, 1979. One of the liens was acquired in January of 1978 prior even to the date of the enactment of the new law on November 6, 1978; the other was acquired in April of 1979, after the enactment date but prior to the effective date of the new law.

As with the other avoidance powers contained in the law [such as those found in Sections 544(a), 544(b), 545, 547, 548 and 549] whereby various liens and transactions may be rendered invalid, this new avoidance power clearly may be constitutionally applied to the types of liens and security interests specified therein which have been obtained subsequent to October 1, 1979. After the date such a statutory avoidance provision becomes effective, any party thereafter acquiring a lien or interest subject to its reach is likewise charged with its effect. But, liens or interests otherwise valid and acquired prior to the date such a statutory avoidance provision becomes effective have not been acquired with any such inherent potential statutory infirmity.

In accordance with the settled rule that constitutional issues should not be reached if the rights of parties may be determined upon other grounds, the Supreme Court in the early case of *Auffm'ordt v. Rasin*, 102 U.S. (12 Otto) 620, 26 L.Ed. 262 (1880) and later in its 1914 decision in *Holt v. Henley*, 232 U.S. 637, 34 S.Ct. 459, 58 L.Ed. 767, held that the enactment of or amendment to a statutory avoidance power should not be construed to operate retroactively unless the statutory language imperatively requires such construction. The legal issue presented in the *Henley* case is strikingly analogous to the legal issue involved in the case at hand, i. e. whether a new statutory avoidance power section should be applied retroactively.

In 1910, Congress enacted the statutory forerunner [§ 47 (a)] of the avoidance power later recast into § 70(c) of the old Act and which is now found in § 544(a). If applied retroactively, it would have invalidated a creditor's prior security right as to certain property which could not have been avoided and invalidated by a trustee prior to the creation of the new statutory right of avoidance. There the Court determined that the new statutory section should not be applied retroactively to impair the vested property right of the creditor and declined to decide "whether and how far in any event the constitutional power of Congress would have been limited" if it had declared the new section to have retroactive application.

■ There is nothing in the language of the new Code nor in its legislative history that either expressly or by implication manifests any congressional intent that this new avoidance section should be given retroactive application so as to impair vested lien rights otherwise valid at the time of their acquisition as distinguished from the underlying contractual obligation. Such an intent cannot be inferred from the repeal and savings provisions of the new Act [Sections 401(a) and 403(a), Pub.L.No. 95–598, 92 Stat. 2682] upon any assumption that there would be no applicable provisions of law to govern accrued rights and liabilities. No vacuum or hiatus exists by reason of the simultaneous repeal and re–enactment of provisions relating to the same subject matter. *Bear Lake & River Waterworks & Irrig. Co. v. Garland*, 164 U.S. 1, 17 S.Ct. 7, 41 L.Ed. 327 (1896). As set forth in ·73 Am.Jur.2d, *Statutes*, § 391:

"Where a statute is repealed by a new statute which relates to the same subject matter, and which re–enacts substantially the provisions of the earlier statute, and the repeal and re–enactment occur simul-

taneously, the provisions of the original statute which are re–enacted in the new statute are not interrupted in their operation by the so–called repeal; they are regarded as having been continuously in force from the date they were originally enacted. Thus, it is said that the simultaneous repeal and re–enactment of substantially the same statutory provision is to be construed, not as a true repeal, but as an affirmation and continuation of the original provision. All rights and interests arising under the original statute are therefore preserved; by the same token, liabilities which have arisen under a statute are not affected by its repeal and re–enactment. Where a statute has been repealed and substantially re–enacted by a statute which contains additions to or changes in the original statute, it follows that while the re–enacted provisions are deemed to have been in operation continuously from the original enactment, the additions or changes are treated as amendments effective from the time the new statute goes into effect.

In many jurisdictions a statute or the constitution contains express provisions concerning the effect of a simultaneous repeal and re–enactment of a statute, and these provisions usually adopt the common–law rule. 77 A.L.R.2d 336." [citation added].

Upon the foregoing authorities, Section 522(f) should not be construed to have any retroactive effect upon either of the creditor's liens involved herein both of which were acquired prior to the effective date of the new law.

 Although unnecessary, in view of the decision reached herein, in passing the distinction should be noted between the impairment of contractual obligations and the impairment of rights to property acquired as security for the payment of such contractual obligations. Although states may not constitutionally impair the obligations of contracts, the federal government is not so prohibited by the constitution. *Louisville Joint Stock Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935); *Ginsberg v. Lindel*, 107 F.2d 721 (8th Cir. 1939). This is nowhere more evident than in the statutory discharge provisions. The discharge of a contractual obligation or debt is a total impairment or destruction thereof.

The repeal of the former statutory provisions can have no effect with respect to the treatment of contractual obligations or debts. Since they may be impaired by subsequent federal legislative enactments, all pre–existing debts or contractual rights as distinguished from vested property rights may be dealt with in accordance with the new provisions. Validly acquired consensual liens, however, are vested rights in property. Unless rendered infirm by a statutory provision in existence prior to their execution so that any such lien is acquired subject thereto, subsequent legislative action cannot impair such vested rights. *Louisville Joint Stock Bank v. Radford, supra.*