674 F.2d 796
 6 Collier Bankr.Cas.2d 1149, 8 Bankr.Ct.Dec. 1416,
Bankr. L. Rep. P 68,657
 In re Harry George WEBBER, Susan Marie Webber, Debtors.
Harry George WEBBER, Susan Marie Webber, Plaintiffs-Appellees,
and
The United States of America, Intervenor
v.
CREDITHRIFT OF AMERICA, INC., Defendant-Appellant.
and
In re Everett YODER, Jr., and Elizabeth Yoder, Debtors.
Everett YODER, Jr. and Elizabeth Yoder, Plaintiffs-Appellees,
and
The United States of America, Intervenor
v.
CREDITHRIFT OF AMERICA, INC., Defendant-Appellant.
 Nos. 81-3055, 81-3128.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 11, 1981.
Decided April 14, 1982.
 
 1
 Daniel J. Gatti, Gatti & Gatti, Salem, Or., for defendant-appellant.
 
 
 2
 Frank Wilson, Portland, Or., argued, for plaintiffs-appellees; John H. Durkheimer, Sussman, Shank, Wapnick, Caplan & Stiles, Portland, Or., on brief.
 
 
 3
 Appeal from the United States Bankruptcy Court For the District of Oregon.
 
 
 4
 Before KILKENNY and SCHROEDER, Circuit Judges and JAMESON,* District Judge.
 
 JAMESON, District Judge:
 
 5
 Credithrift of America, Inc. (Credithrift) perfected liens on personal property of the debtors between the enactment date (November 6, 1978) and the effective date (October 1, 1979) of the Bankruptcy Reform Act of 1978. Credithrift has appealed from two decisions of the Bankruptcy Court for the District of Oregon which applied 11 U.S.C. § 522(f) of the Reform Act to those liens, thereby allowing their avoidance by the debtors. The sole question on appeal is whether § 522(f) may constitutionally be applied to liens perfected after the enactment date but before the effective date of the Act.
 
 I. Legislative Background
 
 6
 The Reform Act was passed by Congress on October 6, 1978 and signed into law by the President on November 6, 1978. The effective date of the Act was October 1, 1979.
 
 
 7
 A primary goal of the Reform Act, the first major revision of the Bankruptcy Act since 1938, was to provide an effective modern bankruptcy mechanism for consumer debtors. Congress recognized that consumer credit had become a fundamental element of the post-war economy and that the laws needed reform to make "bankruptcy a more effective remedy for the unfortunate consumer debtor." H.R.Rep.No.95-595, 95th Cong., 2nd Sess. 4 (1978), reprinted in 5 U.S.Code Cong. & Ad.News 5787, 5966 (1978).
 
 
 8
 Congress found that most state bankruptcy laws were as outmoded as the federal laws and that there was a federal interest in seeing that a debtor survives bankruptcy with adequate possessions to avoid becoming a public charge and to make a fresh start. Id. at 126, reprinted in 5 U.S.Code Cong. & Ad.News 6087. Accordingly, Congress established a set of federal exemptions which serve as an alternative to state bankruptcy law exemptions. Section 522(d) of the Reform Act provides for the exemption of specified personal property from the portion of the debtor's estate subject to sale in bankruptcy for the satisfaction of debts, including
 
 
 9
 (3) The debtor's interest, not to exceed $200 in value in any particular item, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments, that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.
 
 
 10
 As the bankruptcy court noted, "Any excess value will usually be exempt through the use of subsection (d)(5) which gives the debtor another $400.00 general exemption and the right to apply the 'spill over' from the unused portion of the homestead exemption under subsection (d)(1)."
 
 
 11
 Congress recognized, however, that something more was needed, because the purpose of household property exemptions had often been frustrated by creditors who acquired dragnet security interests in otherwise exempt property when making consumer loans. Consequently, Congress included § 522(f)[1] in the Reform Act to allow debtors to avoid certain security interests of creditors:
 
 
 12
 (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is-
 
 
 13
 (1) a judicial lien; or
 
 
 14
 (2) A nonpossessory, nonpurchase-money security interest in any-
 
 
 15
 (A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
 
 
 16
 (B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
 
 
 17
 (C) professionally prescribed health aids for the debtor or a dependent of the debtor.
 
 II. Factual and Procedural Background
 
 18
 On July 2, 1979, defendant/appellant Credithrift made a loan to Everett and Elizabeth Yoder. The Yoders executed a note for $2,508.90, payable to Credithrift, and signed a form pledging their household furnishings, goods and appliances as security for the loan. On July 23, 1979, Credithrift made a loan to Harry G. and Susan Marie Webber, who executed a note for $3,224.96 and signed a similar security agreement. The parties stipulated that each lien is a "nonpossessory, nonpurchase-money security interest" that arose after November 6, 1978 and before October 1, 1979.
 
 
 19
 The Webbers and Yoders subsequently filed petitions in bankruptcy on May 5, 1980 and July 1, 1980 respectively. Each couple sought to avoid the Credithrift liens in their exempt household goods pursuant to § 522(f)(2)(A). Credithrift asserted that § 522(f)(2)(A) cannot be constitutionally applied in these cases because the security interests were perfected prior to the effective date of the Reform Act. The constitutional question was certified to the Attorney General of the United States, who, through the United States Attorney, intervened, pursuant to 28 U.S.C. § 2403, in support of the constitutionality of the challenged provision.
 
 
 20
 On November 17, 1980 the bankruptcy court concluded in the Webber case that " § 522(f)(2) is constitutional in so far as it applies to liens arising between November 6, 1978 and October 1, 1979, and the plaintiffs are entitled to the voiding of the defendant's lien on their household furnishings, household goods and appliances." In re Webber, 7 B.R. 580, 586 (Bkrtcy.D.Or.1980). A stipulated judgment was subsequently entered in the Yoder case allowing similar relief based upon the Webber decision. Both cases have come to this court on direct appeal pursuant to 28 U.S.C. § 1293(b). In this court, the United States, in effect, represents the debtors/appellees.
 
 III. Contentions of Parties
 
 21
 Appellant contends that (1) § 522(f)(2)(A) cannot be given retroactive effect because to do so would be manifestly unreasonable; (2) a creditor whose rights in specific property have attached prior to the effective date of the law may not be deprived of those rights by legislative enactment, and giving retroactive effect to § 522(f)(2) amounts to an unconstitutional taking of property under the holding in Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935); (3) the public cannot be considered to be "on notice" of a statute until it is made effective and both parties were on notice of the effective date; and (4) the Fifth Amendment protects all property interests, whether real or personal, regardless of monetary value.
 
 
 22
 Appellee contends that (1) the bankruptcy law comports with due process because it is not so grossly unreasonable or arbitrary as to be incompatible with fundamental law; (2) because appellant was on notice of the contents of § 522(f)(2)(A) when the liens were perfected, there is no retroactive effect of constitutional dimension; (3) even if considered to be retroactive, application of § 522(f)(2)(A) is constitutional because it effectuates sound Congressional policy; (4) Radford has been severely limited by subsequent case law and is inapplicable to this case; and (5) the Fifth Amendment does not protect ownership of these liens because they are not property interests of "substantial value."
 
 IV. Prior Court Decisions
 
 23
 At the outset it may be noted that both the bankruptcy courts and the courts of appeal are divided with respect to the retroactive applicability of § 522(f) (2)(A). Bankruptcy courts in Oklahoma, Colorado, Oregon, Michigan, Washington, Kansas, and New Mexico have held that it cannot be applied to liens perfected before the Reform Act's enactment date.[2] This holding was followed by the Court of Appeals for the Tenth Circuit in Rodrock v. Security Industrial Bank, 642 F.2d 1193 (10 Cir. 1981), prob. jur. noted, --- U.S. ----, 102 S.Ct. 969, 71 L.Ed.2d 108 (U.S.1981) and by the Court of Appeals for the Seventh Circuit in In the Matter of: Willis R. Gifford and Jacqueline M. Gifford, 669 F.2d 468, 474, (7 Cir. 1982) ("Gifford").[3] Bankruptcy courts in Ohio, Utah and Wisconsin have held that § 522(f)(2)(A) may be applied to pre-enactment liens.[4] This holding was followed by the Court of Appeals for the Third Circuit in In re: Charles E. Ashe and Susan J. Ashe, t/a C & S Fuel Service, Debtors, et al., 669 F.2d 105 (3 Cir. 1982) ("Ashe").
 
 
 24
 Bankruptcy courts in Tennessee, Illinois, Wisconsin, Nevada (dealing with § 522(f)(1)-judicial liens), Texas, Oregon, Colorado, Louisiana, Missouri, Kansas, Georgia and Ohio have held that § 522(f)(2)(A) may be applied to liens created after the Reform Act's enactment date but before its effective date, i.e., in the so called "gap" period.[5] Both Ashe and Gifford[6] impliedly support this holding, while Rodrock is equivocal.[7] Courts in Michigan, Washington, Oklahoma, Colorado (dealing with § 522(f)(1)-judicial liens) Kansas and Florida have held that the effective date is controlling and that § 522(f)(2)(A) cannot be applied to liens vested before that date.[8] It will be noted that the bankruptcy courts in Colorado and Kansas are themselves divided. In In Re Henderson, 10 B.R. 19 (Bkrtcy.N.D. Indiana 1980), the court ruled against giving retroactive effect to § 522 but left open the question of whether the controlling date was the enactment date or the effective date. Aside from what is implied in Ashe and Gifford, no appellate court has directly ruled on the applicability of § 522(f) to liens vested during the "gap" period.
 
 V. Retroactive Effect
 
 25
 The significance of "legislative intent" in determining whether a statute may be applied retroactively was well stated in Matter of Ward, 14 B.R. at 557-58:
 
 
 26
 A retroactive statute is one "which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty or attaches a new disability, in respect to transactions or considerations already past." 16A Am.Jur.2d Constitutional Law § 661, at 641 (1979). As a general rule of construction, " 'legislation must be considered as addressed to the future, not to the past ... (and) a retrospective operation will not be given to a statute which interferes with antecedent rights ... unless such be the unequivocal and inflexible import of the terms, and the manifest intention of the legislature'." Greene v. United States, 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964) (quoting Union Pac. R. Co. v. Laramie Stock Yards Co., 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913)). Thus, the issue whether section 522(f) has retroactive application turns on a determination of legislative intent. See Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858 (1938). (footnote omitted).[9]
 
 
 27
 Each of the appellate courts which has considered § 522(f) has either expressly or implicitly ruled that Congress intended § 522(f) to apply to post enactment security interests. Rodrock, 642 F.2d at 1196-97; Ashe, supra; Gifford, 669 F.2d at 474 n.3. The bankruptcy courts are in general accord. As is exhaustively discussed in those cases, both the transition sections prescribed in Title IV of the Reform Act[10] and the "fresh start" concept inherent in § 522[11] provide forceful argument favoring retroactivity. We agree that Congress intended § 522(f) to apply retroactively to security interests created before October 1, 1979. There remains for consideration, however, the crucial question of whether the provisions of § 522(f) could constitutionally be applied to a security interest which vested prior to the effective date of the Act.
 
 VI. Constitutionality
 
 28
 (a) Power of Congress
 
 
 29
 The Constitution expressly confers on the Congress the power to establish uniform laws on bankruptcy throughout the nation.[12] Generally, this authority "includes the power to discharge the debtor from his contracts and legal liabilities as well as to distribute his property." Hanover National Bank v. Moyses, 186 U.S. 181, 188, 22 S.Ct. 857, 860, 46 L.Ed. 1113 (1902). Thus, bankruptcy legislation has traditionally operated to affect creditors' interests which vested prior to the effective date of the legislation. See Wright v. Union Central Life Ins. Co., 304 U.S. 502, 516, 58 S.Ct. 1025, 1033, 82 L.Ed. 1490 (1938).[13] Unlike the states, Congress is not prohibited from passing laws that impair contractual obligations.[14] Continental Bank v. Rock Island Ry., 294 U.S. 648, 680, 55 S.Ct. 595, 608, 79 L.Ed. 1110 (1935). See also Kuehner v. Irving Trust Co., 299 U.S. 445, 452, 57 S.Ct. 298, 301, 81 L.Ed. 340 (1937). In fact, the very essence of bankruptcy laws is the modification or impairment of contractual obligations.
 
 
 30
 There is, however, "as respects the exertion of the bankruptcy power, a significant difference between a property interest and a contract, since the Constitution does not forbid impairment of the obligation of the latter." Kuehner, 299 U.S. at 451-52, 57 S.Ct. at 301. But the "bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment." Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 589, 55 S.Ct. 854, 863, 79 L.Ed. 1593 (1935).
 
 
 31
 (b) Radford
 
 
 32
 The split in the case law with respect to the constitutional issue presented is due in large part to divergent interpretations of Radford. In Radford the Court held that the Frazier-Lemke Act was unconstitutional under the Fifth Amendment. The Act, an amendment to the Bankruptcy Code, was emergency legislation designed to provide relief for insolvent farmers by permitting them to obtain from the bankruptcy court a five-year stay of state foreclosure proceedings while paying a fair annual rental which would be divided among secured and unsecured creditors. At the end of the five year period the mortgage could be extinguished by the payment of the appraised price at the beginning or end of the period at the option of the mortgagee. The Act specifically provided that it was to have retroactive effect. In concluding that the Frazier-Lemke Act was unconstitutional under the Fifth Amendment, the Court recognized that under the bankruptcy power the court may discharge a debtor's personal obligations, but held that it could not take for the benefit of the debtor substantive rights in specific property acquired by the creditor prior to the Act.[15]
 
 
 33
 In Ashe, supra, the court concludes that Radford was effectively limited, if not tacitly overruled by Wright v. Vinton Branch of the Mountain Bank of Roanoke, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937), and Helvering v. Griffiths, 318 U.S. 371, 400-401 & n. 52, 63 S.Ct. 636, 651-652 n. 52, 87 L.Ed. 843 (1943). 669 F.2d at 474. On the other hand, the court in Rodrock held that while Wright and other cases may well refine the rule of Radford, "they do not destroy the fundamental teaching of Radford that Congress may not under the bankruptcy power completely take for the benefit of a debtor rights in specific property previously acquired by a creditor." 642 F.2d at 1198[16] The court in Gifford agreed with the holding in Rodrock. 669 F.2d at 472.
 
 
 34
 (c) Notice of Enactment
 
 
 35
 While Radford may still be controlling as to property rights which vested prior to the enactment of new bankruptcy legislation, we conclude that it is inapplicable to the issue considered here. Justice Brandeis carefully noted that while the bankruptcy legislation considered in Radford was unconstitutional, "(t)he power over property pledged as security after the date of the Act may be greater than over property pledged before." Radford, 295 U.S. at 589, 55 S.Ct. at 863 (emphasis added).
 
 
 36
 Here the liens were acquired approximately eight months after the passage of the Reform Act and approximately four months before its effective date. Obviously both parties had notice of the enactment and the provisions of the Act with respect to when its various sections and subsections would take effect. Whether the enactment date or effective date is controlling under the circumstances of these cases presents a close question. It is not surprising that the bankruptcy courts have reached different conclusions.
 
 
 37
 The bankruptcy court in these cases held that the retroactive effects of § 522(f)(2) are not so unreasonable or arbitrary as to deny due process; and that "It is not unreasonable to impute to credit companies and their attorneys the knowledge and understanding of a new law after that law has been enacted." 7 B.R. at 584. The court concluded accordingly that there should be a distinction between cases where the lien arose before November 6, 1978, and those where it arose "between the enactment and effective dates of the Bankruptcy Code."
 
 
 38
 Typical of the cases holding that debtors are not entitled to avoid liens acquired before the effective date of October 1, 1979, is Schulte v. Beneficial Finance of Kansas, 8 B.R. 12 (Bkrtcy.D.Kan.1980). The decision in that case contains an analysis of prior cases involving the effect of notice of the passage of legislation with a postponed effective date.[17] The court concluded that where a statute itself "schedules a specific effective date, it is that postponed date and not the earlier date of enactment which controls." Id. at 16.
 
 
 39
 Although a close question is presented, we agree with the bankruptcy court in the instant cases that it is "not unreasonable to impute to credit companies and their attorneys the knowledge and understanding of a new law after that law has been enacted." When Credithrift made the loans in July, 1979, it should have been fully aware that the exemption provisions of § 522 would become effective on October 1, 1979, and that any bankruptcy filed subsequent to that date could result in an avoidance of their liens on the exempt property. The bankruptcy court properly distinguished between cases where the liens arose before the enactment date and those arising after the enactment date where the creditor had knowledge of the prospective exemption provisions.
 
 
 40
 AFFIRMED.
 
 
 41
 SCHROEDER, Circuit Judge, concurring separately:
 
 
 42
 I agree with the result reached by the majority. The 1978 Bankruptcy Reform Act exemption, which makes certain liens unenforceable after the effective date of the Act, constitutionally can be applied to a lien created after the statute was enacted but before it became effective. I write separately only because I think the majority makes the problem harder than it is.
 
 
 43
 Congress clearly intended this result. The statute unambiguously provides for it. At the time this lien was created, the creditor had full notice that under the new law the lien would be unenforceable in the event the debtor filed for bankruptcy after the new Act became effective. In my view, application of the statute to liens created after the statute was passed simply does not present a substantial question, much less a close one. See, e.g., Note, Bankruptcy- Section 522(f) of the 1978 Code-Constitutionality of its Application to Security Interests Pre-Dating Enactment of the Code, 27 Wayne L.Rev. 1281, 1288-90, 1293, 1299, 1302 n.143 (1981); Note, Constitutionality of Retroactive Lien Avoidance Under Bankruptcy Code Section 522(f), 94 Harv.L.Rev. 1616, 1617 n.10 (1981).
 
 
 44
 Congress could have made the Act effective from the date of its passage. Had it done so, application of the exemption provisions to this post-enactment lien would raise no possible question of retroactive interference with property rights. Instead, Congress gave some lead time for the public to gain familiarity with the new Act and to adjust debtor/creditor practice accordingly. The creditor can hardly claim to have been prejudiced by Congressional leniency in deferring the effective date.
 
 
 
 *
 The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation
 
 
 [1]
 The purpose of Section 522(f) of the Bankruptcy Code is stated in the following excerpt from the House of Representatives Report:
 In addition, the bill gives the debtor certain rights not available under current law with respect to exempt property. The debtor may void any judicial lien on exempt property, and any nonpurchase-money security interest in certain exempt property such as household goods. The first right allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor. If a creditor beats the debtor into court, the debtor is nevertheless entitled to his exemptions. The second right will be of more significance for the average consumer debtor. Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor's belongings, and obtain a waiver by the debtor of his exemptions. In most of these cases, the debtor is unaware of the consequences of the forms he signs. The creditor's experience provides him with a substantial advantage. If the debtor encounters financial difficulty, creditors often use threats of repossession of all of the debtor's household goods as a means of obtaining payment.
 In fact, were the creditor to carry through on his threat and foreclose on the property, he would receive little, for household goods have little resale value. They are far more valuable to the creditor in the debtor's hands, as they provide a credible basis for the threat, because the replacement costs of the goods are generally high. Thus, creditors rarely repossess, and debtors, ignorant of the creditors' true intentions, are coerced into payments they simply cannot afford to make.
 The exemption provision allows the debtor, after bankruptcy has been filed, and creditor collection techniques have been stayed, to undo the consequences of a contract of adhesion, signed in ignorance, by permitting the invalidation of nonpurchase money security interests in household goods. Such security interests have too often been used by over-reaching creditors. The bill eliminates any unfair advantage creditors have. H.R.Rep.No.95-595, 95th Cong., 2nd Sess. 126-27 (1978), reprinted in 5 U.S.Code Cong. & Ad.News 6087-88 (1978).
 
 
 [2]
 See In Re Pierce, 4 B.R. 671 (Bkrtcy.W.D.Okla.1980); Rodrock v. Security Industrial Bank, 3 B.R. 629 (Bkrtcy.D.Colo.1980), aff'd., 642 F.2d 1193 (10 Cir. 1981), prob. jur. noted, --- U.S. ----, 102 S.Ct. 969, 71 L.Ed.2d 108 (U.S.1981); In Re Hoops, 3 B.R. 635 (Bkrtcy.D.Colo.1980), aff'd., 642 F.2d 1193 (10 Cir. 1981), prob. jur. noted, --- U.S. ----, 102 S.Ct. 969, 71 L.Ed.2d 108 (U.S.1981); In Re Jackson, 4 B.R. 293 (Bkrtcy.D.Colo.1980), aff'd., 642 F.2d 1193 (10 Cir. 1981), prob. jur. noted, --- U.S. ----, 102 S.Ct. 969, 71 L.Ed.2d 108 (U.S.1981); In Re Hawley, 4 B.R. 147 (Bkrtcy.D.Ore.1980); Matter of Malpeli, 7 B.R. 508 (Bkrtcy.N.D.Ill.1980); In Re Woods, 9 B.R. 325 (Bkrtcy.E.D.Mich.N.D.1981) (by implication); Matter of Bibb, 10 B.R. 40 (Bkrtcy.E.D.Mich.S.D.1981) (by implication); In Re Williams, 8 B.R. 562 (Bkrtcy.E.D.Wash.1981) (by implication); Schulte v. Beneficial Finance of Kansas, 8 B.R. 12 (Bkrtcy.D.Kan.1980); Oldham v. Beneficial Finance, 7 B.R. 124 (Bkrtcy.D.N.M.1980)
 
 
 [3]
 In Rodrock and Gifford, as here, the United States in effect represented the debtors
 
 
 [4]
 See Matter of Rutherford, 4 B.R. 510 (Bkrtcy.S.D.Ohio W.D.1980); In Re Ambrose, 4 B.R. 395 (Bkrtcy.N.D.Ohio 1980); In Re Curry, 5 B.R. 282 (Bkrtcy.N.D.Ohio 1980), aff'd., Curry v. Assoc. Financial Services, 11 B.R. 716 (N.D.Ohio E.D.1981); In Re Sweeney, 7 B.R. 814 (Bkrtcy.E.D.Wisc.1980); In Re Pillow, 8 B.R. 404 (Bkrtcy.D.Utah 1981)
 
 
 [5]
 See In Re Head, 4 B.R. 521 (Bkrtcy.D.Tenn.1980); In Re Beck, 4 B.R. 661 (Bkrtcy.C.D.Ill.1980); In Re Sweeney, 7 B.R. 814 (Bkrtcy.E.D.Wisc.1980); In Re Bradford, 6 B.R. 741 (D.Nev.1980) (dealing with § 522(f)(1)-judicial liens); In Re Brown, 7 B.R. 264 (Bkrtcy.N.D.Texas 1980); In Re Hawley, 4 B.R. 147 (Bkrtcy.D.Ore.1980); In Re Seltzer, 7 B.R. 80 (Bkrtcy.D.Colo.1980); Wells v. Person-to-Person Citicorp, 7 B.R. 875 (Bkrtcy.D.Colo.1980); In Re Pape, 7 B.R. 443 (Bkrtcy.N.D.Fla.1980); In Re Steinart, 4 B.R. 354 (Bkrtcy.W.D.La.1980); Matter of Baker, 5 B.R. 397 (Bkrtcy.W.D.Mo.1980), modified en banc, In Re Baker, 11 B.R. 125 (Bkrtcy.W.D.Mo.1981); Matter of Primm, 6 B.R. 142 (Bkrtcy.D.Kan.1980); Matter of Rutherford, 4 B.R. 510 (Bkrtcy.S.D.Ohio 1980) (by implication); In Re Ambrose, 4 B.R. 395 (Bkrtcy.N.D.Ohio 1980) (by implication); In Re Curry, 5 B.R. 282 (Bkrtcy.N.D.Ohio 1980) (by implication), aff'd., Curry v. Assoc. Financial Services, 11 B.R. 716 (N.D.Ohio 1981); Matter of Ward, 14 B.R. 549 (Bkrtcy.S.D.Ga.1981)
 
 
 [6]
 The Gifford court said:
 (G)iving § 522(f)(2) prospective effect only simply means that the power of avoiding liens under its provisions will take effect on October 1, 1979, and apply to all liens arising after that date. Liens created prior to that date will continue to be effective under state law-precisely as they were under the old Bankruptcy Act.
 669 F.2d at 474. But the court also said:
 We agree that because post-enactment, pre-effective creditors had notice at the time credit was extended and their lien attached that the new Code would govern subsequent bankruptcies, even though the new Code was not technically effective, they should be treated the same as post-effective creditors.
 Id. at 474 n. 3. Although this language appears to be in conflict, we interpret Gifford to imply that § 522(f) may validly be applied to "gap" period liens.
 
 
 [7]
 Rodrock, 642 F.2d 1193, affirmed Schulte v. Beneficial Finance of Kansas, 8 B.R. 12 (Bkrtcy.D.Kan.1980), which held that § 522(f) was unconstitutional as to both pre-enactment and "gap" period liens. 8 B.R. at 14, 16. Since the Rodrock court stated that it was considering only pre-enactment date liens, 642 F.2d at 1196 n. 3, however, it cannot be assumed that the Schulte holding with regard to "gap" period liens was affirmed
 
 
 [8]
 See In Re Woods, 9 B.R. 325 (Bkrtcy.E.D.Mich.N.D.1981); Matter of Bibb, 10 B.R. 40 (Bkrtcy.E.D.Mich.S.D.1981); In Re Williams, 8 B.R. 562 (Bkrtcy.E.D.Wash.1981); In Re Seiler, 8 B.R. 542 (Bkrtcy.W.D.Okla.1981); Lucero v. Security Industrial Bank, 4 B.R. 659 (B.Ct.D.Colo.1980) (dealing with § 522(f)(1)-judicial liens); Schulte v. Beneficial Finance of Kansas, 8 B.R. 12 (Bkrtcy.D.Kan.1980), aff'd., 642 F.2d 1193 (10 Cir. 1981), prob. jur. noted, --- U.S. ----, 102 S.Ct. 969, 71 L.Ed.2d 108 (U.S.1981); In Re Pape, 7 B.R. 443 (Bkrtcy.N.D.Fla.1980)
 
 
 [9]
 The bankruptcy court here concluded that because the security interests vested after the Reform Act's enactment date, lien avoidance pursuant to § 522(f) has only a "prospective not a retrospective, effect." Webber v. Credithrift of America, 7 B.R. 580, 584 (Bkrtcy.D.Ore.1980). Other courts are in accord. In Re Pommerer, 10 B.R. 935, 947 (Bkrtcy.D.Minn.1981); In Re Teske, 9 B.R. 18 (Bkrtcy.W.D.Mich.1981); In Re Head, 4 B.R. 521 (Bkrtcy.D.Tenn.1980). Although we agree that "post-enactment security interests should be accorded an analysis distinct from preenactment security interests in determining the constitutionality of section 522(f) as applied," Matter of Ward, 14 B.R. at 558, it is still necessary to decide "whether or not Congress intended section 522(f) to reach security interests created prior to the effective date of the Reform Act." Id
 
 
 [10]
 As noted in Rodrock :
 Cases filed in bankruptcy court shortly after the October 1, 1979, effective date of the Reform Act would necessarily involve creditors' interests which came into being prior to the effective date of the Reform Act. As of October 1, 1979, the old Bankruptcy Act stood repealed. So, if, in a bankruptcy case filed on or after October 1, 1979, the Reform Act does not apply to creditors' interests which came into existence prior to October 1, 1979, then there would be no bankruptcy law governing the particular matter at hand. We cannot believe that Congress intended such a statutory "gap."
 642 F.2d at 1196.
 
 
 [11]
 If section 522(f) were to apply prospectively only, then the abuses intrinsic in nonpurchase-money security interests in household possessions, as congressionally discerned, would linger for an indefinite period after Congress had acted to remedy the problem. Moreover, prospective application would effectively delimit a debtor's entitlement to exemptions which would otherwise be realized through lien avoidance. Thus, debtors filing petitions on or after October 1, 1979, which in the majority of proceedings would relate to debts acquired prior to the Reform Act's effective date, would be denied the benefit of a "fresh start" to the full extent intended by Congress. It is evident, therefore, that without the retroactive operation of section 522, including the lien avoidance authority prescribed in section 522(f), the fresh start concept, one of the central policy aspects of the Reform Act, would be significantly diluted
 Matter of Ward, 14 B.R. at 559.
 
 
 [12]
 "The Congress shall have Power ... To establish ... uniform Laws on the subject of Bankruptcies throughout the United States." U.S.Const.Art. I, § 8, cl. 4
 
 
 [13]
 The prohibition against Congress passing "ex post facto" laws, U.S.Const.Art. I, § 9, cl. 3, applies only to laws which impose a punishment for an act which was not punishable at the time it was committed, i.e., refers only to criminal laws. Burgess v. Salmon, 97 U.S. 381, 385, 24 L.Ed. 1104 (1878)
 
 
 [14]
 "No State shall ... pass any Bill of Attainder, ex post facto law, or Law impairing the Obligation of Contracts...." U.S.Const.Art. I, § 10, cl. 1
 
 
 [15]
 The Court held that the Act had taken from the mortgagee the following property rights:
 
 
 [1]
 The right to retain the lien until the indebtedness thereby secured is paid
 
 
 [2]
 The right to realize upon the security by a judicial public sale
 
 
 [3]
 The right to determine when such sale shall be held, subject only to the discretion of the court
 
 
 [4]
 The right to protect its interest in the property by bidding at such sale whenever held, and thus to assure having the mortgaged property devoted primarily to the satisfaction of the debt, either through receipt of the proceeds of a fair competitive sale or by taking the property itself
 
 
 [5]
 The right to control meanwhile the property during the period of default, subject only to the discretion of the court, and to have the rents and profits collected by a receiver for the satisfaction of the debt
 295 U.S. 594-95, 55 S.Ct. 865.
 
 
 [16]
 Appellees argue that even assuming its continued vitality, Radford is limited to protecting interests of "substantial value" in real property. A lien is clearly an interest in property, 11 U.S.C. § 101(28), and for Constitutional purposes, it makes no difference whether liens are on personal or real property. Cf. Armstrong v. United States, 364 U.S. 40, 44, 80 S.Ct. 1563, 1566, 4 L.Ed.2d 1554 (1960); Kuehner, supra. It is true that Congress noted the typically small market value of the exempted household effects, see note 1, para. 3, supra, and several courts have based their decisions to apply § 522(f) retroactively on their conclusion that creditors were not losing property rights of significant monetary value. E.g., Matter of Rutherford, 4 B.R. 510, 512-13 (Bkrtcy.S.D.W.D.Ohio 1980); In Re Ambrose, 4 B.R. 395, 400 (Bkrtcy.N.D.Ohio 1980). As noted in Gifford, however, "it is the value of that right which is at issue, not the worth of the collateral." 669 F.2d at 473. We agree that a "property right is of value regardless of the worth of the object in which it is held, and is protected from governmental appropriation by the taking clause of the Fifth Amendment." Id.; In Re Hoops, 3 B.R. 635, 639-40 (Bkrtcy.D.Colo.1980), aff'd., 642 F.2d 1193 (10 Cir. 1981), prob. jur. noted, --- U.S. ----, 102 S.Ct. 969, 71 L.Ed.2d 108 (U.S.1981) (No. 81-184)
 
 
 [17]
 We do not find that any of these cases is sufficiently similar to dispose of this issue