In re Charles W. **HUNTER** and Phyllis J. Hunter, Debtors.

Charles W. **HUNTER** and Phyllis J. Hunter, Plaintiffs,

v.

**SCHULTHEIS BROTHERS COMPANY,** Equibank, N.A. and Terence O'Halloran, Trustee, Defendants.

**Bankruptcy No. 82–1951.
Adv. No. 83–322.**

United States Bankruptcy Court, W.D. Pennsylvania.

June 27, 1983.

Gary P. Nelson, Pittsburgh, Pa., for Equibank.

Joseph E. Fieschko, Pittsburgh, Pa., for debtors.

Terence O'Halloran, Greensburg, Pa., trustee.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

The dispute between the Debtors and Equibank in this case requires the Court to consider whether the so-called "gap" (post-enactment and pre-effective date) judgment liens are voidable pursuant to 11 U.S.C. § 522(f)(1), in light of the recent Supreme Court opinion in the case of *United States v. Security Industrial Bank, et al.,* —— U.S. ——, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982). The Court holds that Congress intended the Code to apply to the gap liens and there is no constitutional impediment to such enactment. This Memorandum Opinion constitutes the findings of fact and conclusions of law as required by Bankruptcy Rule 752.

The facts in this case are not in dispute. The Bankruptcy Reform Act of 1978, 11 U.S.C. § 101 *et seq.* ("the Code") was enacted on November 6, 1978. Equibank's borrowing relationship with the Debtors began in early 1979. Equibank filed and had judgments indexed against the Debtors in March, May and September of 1979, in Westmoreland County. The Code took effect on October 1, 1979. The Debtors filed a Chapter 7 petition in June of 1982 and thereafter initiated this adversary proceeding to avoid judgments to the extent that their exemptions are impaired.

No objections were timely filed to the Debtors' claim of exempt property, and no dispute exists concerning the existence of an impairment. The following statements contained in the schedules and pleadings have not been controverted and are taken as true. The parcel of real property involved, in Westmoreland County, is worth $33,000.00. Other liens on the property, prior in time to at least one of Equibank's liens, and not targets of this avoidance action, are valued at $17,557.60. The value of Equibank's liens totals $44,676.81. Equibank is also owed a substantial amount of unsecured debt.

Equibank contends, first, that the issue in this case is not distinguishable from the central issue addressed in *Security Industrial Bank, supra,* and *Holt v. Henley,* 232 U.S. 637, 34 S.Ct. 459, 58 L.Ed. 767 (1914), and therefore the rule of those cases controls this issue. In *Security Industrial Bank, su-*

*pra,* and *Holt, supra,* the Supreme Court held that bankruptcy legislation would not be construed to permit an abrogation of liens established before its enactment, in the absence of a clear expression of intent by Congress.

Equibank argues that the only available rationale for finding gap liens avoidable is the argument that enactment of a statute constitutes notice to the world that the operation of the statute will alter rights and relationships between parties. Equibank attacks this rationale by contending that persons can be charged only with knowledge of statutes in full force and effect. Equibank distinguishes this knowledge of enactment from knowledge of effective date.

Finally, Equibank raises a constitutional challenge. Equibank argues that an application of Code § 522(f)(1) to gap liens would result in an unconstitutional taking of property rights for a public purpose without just compensation, in violation of the Fifth Amendment.

The Debtors contend that Code § 522(f)(1) applies prospectively to liens perfected after the enactment date of the Code, and that no question of retroactivity exists here. Several bankruptcy courts are in accord with this view. See *Matter of Ward,* 14 B.R. 549 (D.C.S.D.Ga.1981). The Debtors argue that Equibank had full notice that its judgment liens could be avoided in the event that the Debtors filed for bankruptcy after the effective date of the reform legislation.

In *Security Industrial Bank, supra,* at footnote 11, the Supreme Court stated that it had no occasion to consider the application of Code § 522 to gap liens. The leading case to have considered this issue is *In re Webber,* 674 F.2d 796, 8 B.C.D. 1416 (9th Cir.1982), *cert. den.* by *Credithrift of America, Inc. v. U.S.,* —— U.S. ——, 103 S.Ct. 567, 74 L.Ed.2d 931 (1982). In *Webber, supra,* the Ninth Circuit held that Congress intended Code § 522(f) to apply retroactively. As a result of the Supreme Court's later holding in *Security Industrial Bank, supra,* the holding in *Webber, supra,* needs

to be read as restricted to only the facts concerning gap liens. On a restricted basis, this Court views the holding in *Webber, supra,* as remaining vital. The issue of the intent of Congress must be addressed further, though, before the other points raised by Equibank may be addressed. The District Court in *Matter of Ward, supra,* stated:

"This Court agrees with the notion implicit in these cases (i.e., *In re Pommerer,* 10 B.R. 935 (Bkrtcy.D.Minn.1981); *In re Teske,* 9 B.R. 18 (Bkrtcy.W.D.Mich.1981); *In re Webber,* 7 B.R. 580 (Bkrtcy.D.Or. 1980); *In re Seltzer,* 7 B.R. 80 (Bkrtcy.D. Colo.1980); *In re Head,* 4 B.R. 521 (Bkrtcy.D.Tenn.1980) that post-enactment security interests should be accorded an analysis distinct from pre-enactment security interests in determining the constitutionality of § 522(f) as applied. Yet, this distinction does not obviate the need to decide first whether or not Congress intended section 522(f) to reach security interest created prior to the effective date of the Reform Act." At 558.

Equibank assumes that the lack of a clear statement of Congressional intent to apply Code § 522(f) to pre-enactment liens means that no evidence exists of an intent to apply Code § 522(f)(1) to gap liens. This Court looks to the legislative history of the Code and finds evidence that the need for institutional modifications and administrative convenience constituted Congress' reasons for the eleven-month postponement of the effective date of the Code. The commentary on § 402 of P.L. 95–598 (regarding the effective date) contained in House Report No. 95–595, at 458, U.S.Code Cong. & Admin. News 1978, p. 5787, indicates that the effective date of the Code was postponed to coincide with the new fiscal year. The Senate commentary on § 405 states as follows:

"The transition period prescribed by section 402(a) and (b) is necessary in view of the time required to acquire meaningful empirical data under the vastly enlarged jurisdiction and altered structure of the new bankruptcy court." S. Report 95–

989, 95th Cong., 2nd Session 167 (1978), U.S.Code Cong. & Admin.News 1978, p. 5953.

Other evidence of Congressional purpose exists in the combined effect of the transition provisions. All prior bankruptcy laws were repealed as of October 1, 1979, though the savings provision established that all cases commenced prior to October 1, 1979 were procedurally and substantively governed by the prior law. All cases commenced after October 1, 1979 are controlled by the Code, procedurally and substantively. Therefore, only the Code governs the enforceability of judgment liens created before the effective date. The old Act did not contain a provision similar to § 522(f); however, if it did, would the old Act's provision govern? Clearly not! Although this last point was frequently made in the now settled argument for the application of Code § 522(f) to pre-enactment liens, it carries more weight in the analysis of the application of Code § 522(f)(1) to gap liens, in view of the stated reasons for the eleven-month postponement.

The critical question in this case is whether Congress sufficiently expressed its intention in this matter. This Court also looks to the general policy implicit in the Code, to ascertain Congress' intention. For the first time this Code makes federal exemptions available to debtors as a rehabilitative measure and to enable debtors to make a fresh start with their affairs. Both the House and the Senate Judiciary Committee Reports contain the following commentary on Code § 522(f):

> "Subsection (f) protects the debtor's exemptions, his discharge and thus his fresh start by permitting him to avoid certain liens on exempt property. The debtor may avoid a judicial lien on any property to the extent that the property could've been exempted in the absence of the lien ...." H.R. Report 95–595, 95th Cong., 2nd Session 362 (1978), U.S.Code Cong. & Admin.News 1978, p. 6318.

To obstruct the "fresh start" philosophy embodied in the Code by a mechanical application of the effective date would frustrate, rather than serve, the intention of Congress. After having provided a remedy to be applied beginning on October 1, 1979, Congress could not have intended to permit the fixing of unavoidable judicial liens which could impair exemptions for an additional eleven months.

■ Additional support for this Court's reading of the intention of Congress is contained later in this opinion. This Court views Code § 522(f)(1) as primarily effecting state-created creditor remedies, rather than property interests. Remedial legislation is to be liberally construed. Based upon the foregoing consideration of policy and the legislative history of the Code, this Court holds that Congress intended Code § 522(f)(1) to apply to gap liens.

■ We are now required to address the constitutional issue. Equibank has not complied with Local Bankruptcy Rule 3, requiring that the Attorney General of the United States be notified of the pendency of a constitutional issue. However, this Court upholds the constitutionality of Code § 522(f)(1) as applied to gap liens for reasons described below, and therefore we see no need to await the response of the Attorney General.

Equibank has argued that the application of Code § 522(f)(1) would result in a taking of property rights, even if for a wholly public purpose, without just compensation, in violation of the Fifth Amendment. The Supreme Court, in *Louisville Joint Stock and Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), subjected the bankruptcy power to the Fifth Amendment prohibition against taking private property without compensation. *Radford, supra,* was cited by the Supreme Court in *Security Industrial Bank, supra,* as dicta raising substantial doubt whether the destruction of pre-enactment liens comports with the Fifth Amendment. However, the Supreme Court in *Security Industrial Bank, supra,* deliberately did not reach the constitutional issue, and the concurring opinion dissented from the dicta concerning "takings" enunciated therein. Justice Blackmun, with Jus-

tices Brennan and Marshall concurring, make quite clear their willingness to distinguish *Radford, supra.* This Court does not read *Security Industrial Bank, supra,* to affirm the constitutional principles asserted *Radford, supra,* as Equibank urges.

The continuing vitality of the rule of *Radford, supra,* cannot be considered without also addressing a decision the Court issued in *Wright v. Vinton Branch of Mountain Trust Bank of Roanoke,* 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937). Does the avoiding of a judgment lien interfere with a property right protected by the Fifth Amendment? In *Wright, supra,* the Court did not find that to be so, even when retroactive effect was given. See also *Wright v. Union Central Life Ins. Co.,* 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940), cited with approval in *U.S. v. Whiting Pools,* —— U.S. ——, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

This Court looks to state law to answer this question of a property right further. At common law, a judgment did not create a lien against the debtor's real property. A judgment may be recorded and indexed in the county where the real property is situated, according to statute, to create a lien. 42 Pa.C.S.A. § 4303. While the language of the statute would seem to create an unqualified lien, the judgment creditor's right to enforce the lien is clearly subject to the debtor's right to take state exemptions. Therefore, a judgment creditor should be aware that at least a portion of his lien cannot be satisfied by execution on the debtor's state exemption. The enactment of a federal exemption and the debtor's election to take such an exemption places the judicial "remedy" aspects of a lien in clear focus.

Also, a judgment lien is neither specific nor choate. If the debtor does not happen to own any property in the county in which the judgment is recorded, the lien of judgment does not attach. Moreover, 42 Pa.C.S.A. § 4303 does not operate to transfer any interest in the debtor's property to the judgment creditor. Transfer of an estate in land or the vesting of an interest can only take place pursuant to a sale. A lien is

also limited in time. Unless such action is taken within five years or the lien revived, the lien loses its priority.

As was noted in the cases of *In re Ashe,* 10 B.R. 97 (Bkrtcy.M.D.Pa.1981) and *In re Burkholder,* 11 B.R. 346 (Bkrtcy.E.D.Pa. 1981):

> "Under Pennsylvania law, ... a judgment is a general and not a specific lien. If there be personal property of debtor it is to be satisfied out of that. If not it is a lien on all his real estate without discrimination. Hence, the creditor is not interested in the property as property, but only in his lien."
>
> *Ashe, supra,* at 99 [citing *Grevemeyer v. Southern Mutual Fire Insurance Co.,* 62 Pa. 340 (1861) ].

The judgment lien creditor rests his claim upon a law which gives him a remedy for the collection of the debt by an execution sale of the property. Until execution has issued, a judgment lien is a remedy, and not an interest in property. See generally *In re Hinson,* 20 B.R. 753 (Bkrtcy.S.C.1982).

The *Radford* decision involved the substantive rights of mortgagees as altered by bankruptcy legislation which was retroactive. The *Radford* Court found that mortgagees lost rights in specific property under state law. The federal bankruptcy legislation was thus held to constitute an unconstitutional taking. Since the *Radford* case dealt with the rights of mortgagees in specific property and because it was clearly retroactive, it is not controlling in this case.

This Court had considered challenges to the retroactive application of Code § 522(f)(1) in the case of *In re Clark,* 11 B.R. 828 (Bkrtcy.W.D.Pa.1981). This Court believes the constitutional interpretations set forth in *Clark, supra,* have vitality, and finds further support in the constitutional teachings contained in the opinion in the case of *In re Ashe,* 669 F.2d 105 (3rd Cir. 1982), *vacated on other grounds* by *Commonwealth National Bank v. Ashe,* —— U.S. ——, 103 S.Ct. 563, 74 L.Ed.2d 927 (1982). First we find the gap liens not to be retroactive. But if so found, not to be a taking of a property right.

As suggested above, we choose to follow *Webber, supra,* at 804, in its holding that it is not unreasonable to impute to creditors and their attorneys the knowledge and understanding of a new law after that law has been enacted. See also *In re Bradford,* 6 B.R. 741 (D.C.Nev.1980).

This Court holds then that Congress intended Code § 522(f)(1) to permit the avoidance of judgment liens perfected between the enactment and effective dates of the Code, and so doing Congress acted constitutionally. An appropriate Order will issue. Defendant Schultheis Brothers Company has not filed a responsive pleading. Upon application, in accordance with Bankruptcy Rule 755(a), a default against Schultheis Brothers Company will be entered.